## Case No. 7,550.

### In re JOSLYN.

[2 Biss. 235; [1] 3 N. B. R. 473 (Quarto, 118); 2 Chi. Leg. News, 137.]

District Court, N. D. Illinois. Jan., 1870.

Jewett, Jackson & Small, for landlord.
W. R. Page, for assignee.

DRUMMOND, District Judge. Various affidavits and petitions have been filed in different cases in bankruptcy, concerning rent due by the bankrupts. They do not present in precisely the same form, nor in the same stages of progress, the acts of the landlord for the recovery of rent, so that, looking at them all together it has become the duty of the court to decide in a general way what is the effect of the bankrupt law upon the right of

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

the landlord, in this state, to recover his rent, when due from a bankrupt to the landlord at the time the proceedings in bankruptcy are commenced.

It is necessary to consider in the first place what are the provisions of law in this state upon the subject of rent and the right of distress in the landlord therefor. The earlier acts did not, in express terms, authorize a distress for rent, but simply recognized the existence of a right in the landlord, it being, as is well known, a common law right; and the adjudications of our courts upon these earlier statutes proceeded upon that principle, but yet treated it as an absolute right. The law provided that where there was a distress for rent it should be lawful for the landlord by himself, his agent, or attorney, to seize for rent any personal property of his tenant that might be found in the county where such tenant should reside, and in this respect it was different from the common law which confined the right of the landlord to distrain for rent to property on the premises. The later statutes have in express terms authorized the landlord to distrain for rent in arrear, and inasmuch as it was somewhat uncertain during what time the right of distress existed after the rent was due, the act of 1857 gave the right to the landlord to distrain the goods of the tenant for the period of six months after the expiration of the term for which the premises were demised. There are also some statutes which declare that the landlord shall have a lien upon certain products of the premises demised, for example upon the crops growing or grown upon the premises.

There is, however, one provision of our statute which becomes very material in the view which the court takes of the questions now under consideration. It declares that in all cases of distress for rent the person making such distress, where the claim does not exceed one hundred dollars, shall file with a justice of the peace, and where it exceeds one hundred dollars with the clerk of the circuit court, a copy of the distress warrant and an inventory of the property levied upon, and thereupon the party against whom the distress warrant shall have been issued, shall be duly summoned and the amount due from him assessed and entered upon the records of the court finding the same, and then the court is to certify to the person or officer making the seizure the amount so found due, and thereupon the officer is to proceed to sell the property so distrained, and make the amount thus certified to him, and return the certificate so issued to him with an indorsement thereon of his proceedings, which return and certificate shall be filed in the proper court.

Under this statute it has been held that the only province of the court is to ascertain whether there is the relation of landlord and tenant, and what is the amount due. The question is, how does the bankrupt law af-

fect the right or lien of the landlord to distrain for rent. In other words, has the landlord the right under the law to distrain for rent, notwithstanding the filing of the petition in bankruptcy, and, can he, although there may be a distress warrant out at the time of the filing of such petition, proceed to obtain a certificate from the proper court and sell the property, notwithstanding a petition may have been filed in bankruptcy between the date of the levy of the distress warrant and the time when the certificate to sell is granted by the court?

The only provision upon the subject of rent in the bankrupt law is contained in the nineteenth section, which is: "Where the bankrupt is liable to pay rent, or other debt falling due at fixed and stated periods, the creditor may prove for a proportionate part thereof, up to the time of the bankruptcy, as if the same grew due from day to day, and not at such fixed and stated periods."

Under the English law, it is well known, the proceeding in bankruptcy did not interfere with the right of the landlord to distrain for rent, provided the property remained on the demised premises. Undoubtedly the right may vary in different states under the bankrupt law, because the right of the landlord is different in different states. In some the right to distrain is entirely taken away, thus placing the landlord upon the same footing as other creditors, and giving him no priority. In some the right to distrain still exists, as in our own state, modified more or less by statute.

Under the bankrupt law of 1841 [5 Stat. 440], the right of the landlord to distrain, in those states where such right existed, was not lost. Under the second section of that law, "all liens valid by the laws of the states respectively, and not inconsistent with the provisions" of that law, were preserved; and in Peck v. Jenness, 7 How. [48 U. S.] 612, it was decided that an attachment on mesne process, levied upon property, and valid by the law of the state where it was issued, was one of the liens preserved by the second section of the law, notwithstanding the property might be held simply upon mesne process.

The twentieth section of the bankrupt law of 1867 declares that "when a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of the debt."

The question is whether the lien of a landlord for rent is such a security as binds the property as against the assignee of the bankrupt and against the rights of the other creditors. To prevent some of the difficulties which sprung up under the administration of the law of 1841, the fourteenth section of the bankrupt law of 1867 declares that the assignment in bankruptcy shall relate back to the commencement of the proceedings, (the

filing of the petition,) and by operation of law thereupon the title to all such property and estate, both real and personal, shall vest in the assignee, notwithstanding the same is then attached on mesne process as the property of the debtor, and it shall dissolve any such attachment made within four months next preceding the commencement of the proceedings. Another clause of this same section declares, "that no mortgage of any vessel or of any other goods or chattels, made as security for any debt or debts, in good faith, and for present considerations, and otherwise valid, and duly recorded pursuant to any statute of the United States or of any state," should be invalidated or affected. It is a little singular that while the bankrupt law of 1867 makes this declaration as to the effect of mesne process and of certain other securities upon property, it is silent as to the effect of the law upon final process; and the inference has been that while it cut off those attachments levied on property under mesne process, it did not necessarily interfere with the right of a particular creditor upon final process; and, therefore, where under the law of a state, a fi. fa. issued on a judgment was a lien on the property from the time of its delivery to the sheriff, such lien would be good, provided the judgment was obtained and execution issued in good faith and not in fraud of the bankrupt law. The latest case decided by the supreme court of Illinois, to which the attention of the court has been directed, is that of O'Hara v. Jones, reported in 46 Ill. 288. In that case the court refers to the decisions which had been previously made by that court to the effect that under the law the landlord had a lien and a right to distrain in all cases where the rent was certain, whether the right was reserved in the lease or not. The point decided in that case was, that the landlord had a right to distrain for rent upon the property of the tenant even after he had made a general assignment for the benefit of creditors, of all his property, real and personal, on the ground that the assignee of the tenant could not hold the goods free from the lien of the landlord; that the assignee took the goods of the assignor as a volunteer and subject to all the liens to which they were then liable. The court stated in that case that the lien in favor of the landlord was superior to other general liens, and might be enforced against all but prior liens and bona fide purchasers without notice, and adds: "And if the goods of the tenant are seized under execution or attachment, the landlord's lien for his rent is superior and will hold the property."

Great stress has been laid upon this sentence, and it is claimed that under the construction which has been given to the law of the state by its supreme court, the assignee has no right to the goods of the tenant in bankruptcy, upon which the landlord has a lien. It may be conceded that under the law

of the state as construed by the supreme court, the lien of the landlord might be enforced against all but prior liens and bona fide purchasers: but, when it is said that the landlord's lien for rent is superior to that of a creditor holding the property under execution or attachment, such general language needs qualification in order to be regarded as strictly correct, and it must be understood as meaning that the landlord's lien would hold the property, provided it was not seized or held under a paramount lien; for if it is meant that the landlord would have a right to distrain goods held by virtue of an execution in the hands of the sheriff, when the distress warrant issued, then it certainly is not law, because that point was expressly ruled after full argument and great consideration by the court, in the case of Rogers v. Dickey, 1 Gilman, 636. There the distress warrant was levied on the first day of May, 1842, on the property of a tenant found on the premises for rent due on the 18th day of March previously; and the court held that an execution delivered to the sheriff on the 8th day of March, against the tenant, bound the property, notwithstanding the levy was not made until the 26th day of May, after the distress warrant was levied upon the property. In that case the court held that the execution creditor had a prior lien upon the property, because the execution was in the hands of the sheriff before the distress warrant was levied.

It is claimed, and with apparent reason, that a distress for rent is not an attachment upon mesne process, and therefore is not within the meaning of the clause of the fourteenth section already referred to; that it is an act of the landlord himself, enforcing his own lien, existing by operation of law, by issuing a distress warrant, and causing the levy to be made upon the property.

It is true it is not, strictly speaking, an attachment upon mesne process; but the question is whether it is not in the nature of an attachment upon mesne process, and whether the order that is given by the court in the form of a certificate after the case is heard, is not in the nature of an execution, and thus bringing the first case fairly within the general scope and spirit of the clause of the fourteenth section. The language of the state statute is that after the property is levied upon the party shall be summoned. Now the most that can be said about the effect of such a warrant is that it seizes the property for the purpose of enforcing a certain right on the part of the landlord. The party against whom it is issued must be summoned to appear before a magistrate or before the court. Although this is not mesne process, it is in the nature of mesne process, requiring this proceeding in order to bring it under the sanction and action of the court. Without this the landlord can take no further step in the cause; and in this respect it is exceedingly similar to the case of an ordinary attachment upon regular mesne process issuing out of a court.

It seems to me, looking at the whole scope and tenor of the bankrupt law, that when a case is in this way brought (as our law brings the distress warrant of the landlord) within the spirit of the clause already referred to, it may be fairly said that the law operates in the case, and that the property is attached upon mesne process.

So when the party has been summoned and brought into court, and the court ascertains whether the relation of landlord and tenant exists, and what is the amount due for rent, and the amount due is entered upon the records of the court finding the same, and thereupon the court certifies to the person or the officer the amount so found due, together with the costs of court; this certificate given by the court, is not, strictly speaking, final process, but it is in the nature of final process, and without it the officer cannot proceed to sell the property, and, therefore, the landlord cannot realize from the property attached the amount due for rent. When the certificate has once been issued it is like a writ of fieri facias to the sheriff, directing him in effect to sell the property of the party. It is to be borne in mind that our law is not like the English law, where there is interference between the right of the landlord and that of the execution creditor upon the goods of the tenant. The English law, as is well known, provided that where there was this conflict betwen the right of the landlord and that of the execution creditor, the officer making the levy under the execution should pay the landlord one year's rent, and to that extent the landlord had a priority over the execution creditor. We have no such law in force in our state, and, therefore, as has been already mentioned, the supreme court decided in the case of Rogers v. Dickey, that the right of the execution creditor was superior to that of the landlord under the circumstances stated.

On the whole, then, I am of the opinion that the fair construction of the bankrupt law upon the right of the landlord, in our state, is to vest in the assignee all the property of the bankrupt tenant, upon which a distress warrant has been issued and levied prior to the granting of the certificate of the court to the officer of the amount due from the tenant, and assessed and entered of record; but that, analogous to the rule in the case of final process, where the right of the landlord has been exercised by the issuing and levy of the warrant and filing a copy thereof and of the inventory of the goods before the magistrate or in the proper court, and the obtaining of the certificate of the amount found due, that becomes in the nature of final process where it is issued, and so has a priority over the general creditor in bankruptcy.

Of course it follows from what has been said that where no distress warrant has been issued, as is the fact in some of the cases upon which the judgment of the court has been asked, prior to the filing of the petition in bankruptcy, the landlord can have no priority or preference over the general creditors, but that he must prove his debt like any other general creditor of the bankrupt, and consequently that all the property so held by the tenant is vested in the assignee.

The question is undoubtedly an important one, and will affect a very considerable amount of property. I have given it full consideration in view of the importance of the subject, and the effect it might have upon the rights of the landlord and of the general creditors of the bankrupt. It is to be remembered that in equity the landlord may have no just preference over many of the general creditors of the bankrupt, and in view of the general scope and spirit of the bankrupt law itself, and of the effect which it was to have upon the rights of creditors, I have thought that unless the intention of the statute was clear to allow the common law or statutory lien of the landlord to have a priority over the general creditor it ought not to be so regarded, and looking at the statutes in our state bearing upon the right of the landlord to distrain for rent, it seems to me that fairly construing the two laws together and the effect which one has upon the other, it must be said that under the bankrupt law, as operating upon the state law, the landlord, except in the particular case referred to, must be treated as being upon the same footing as the general creditors of the bankrupt, and can only have a right to come in like them, and prove his debt in the usual way.

This case was. on appeal, affirmed by Judge Davis in the circuit court.