## In re WEST SIDE PAPER CO.

### (Circuit Court of Appeals, Third Circuit. June 4, 1908.)

### No. 45.

BANKRUPTCY—LIENS—DISTRAINT BY LANDLORD FOR RENT—"LIEN OBTAINED THROUGH LEGAL PROCEEDINGS."

All goods on demised premises, by the common law, or the statutory law of Pennsylvania, may be considered as under a quasi pledge to the landlord, which gives superiority to the specific lien acquired by a distraint. Such a lien is not one obtained through legal proceedings within Bankr. Act. July 1, 1898, c. 541, § 67f, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450), and is not divested by the bankruptcy of the tenant within four months thereafter, and the same rule applies where the bankrupt was a subtenant, admitted to the premises by the lessee without the landlord's consent.

Petition for Review of Decree of the District Court of the United States for the Eastern District of Pennsylvania.

John G. Johnson, for petitioner.
Charles Sinkler, for appellee.

Before MOODY, Circuit Justice, and DALLAS and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is a petition of Francis G. Gallagher, landlord, for review of the decree of the United States District Court for the Eastern District of Pennsylvania, in bankruptcy, affirming the order made by a referee in bankruptcy in a matter as hereinafter stated:

On October 27, 1905, a lease was entered into between the petitioner and a certain McAlpine & Son, of a paper mill in the city of Philadelphia. Though said lease conferred on the lessees no power to assign said lease, or sublet said premises, the said lessees permitted the West Side Paper Company to occupy the premises. To this no assent was given by the lessor. On the 27th day of November, 1906, the petitioner, as landlord, distrained on the goods, chattels and merchandise upon the demised premises for six months' rent in arrear, amounting to $3,000. On the 28th day of November, 1906, the said West Side Paper Company was, upon petition filed the same day, adjudged a bankrupt by the United States District Court for the Eastern District of Pennsylvania, in bankruptcy. Under said adjudication, the following proceedings were had:

Said cause was duly referred to a referee in bankruptcy. On the 30th day of November, 1906, on petition, said referee made an order, restraining the said landlord from further proceedings under his distraint against the property on the premises, until further order of the court. Thereafter, the receiver appointed by the district court in said cause sold the goods, chattels and merchandise distrained upon

by petitioner, landlord as aforesaid, and realized therefrom the net sum of $2,056.68, after deducting expenses of sale.

The petitioner then claimed before the referee that said sum should be paid over to him as the proceeds of the goods on which he had distrained, as aforesaid, and on the 20th day of March, 1907, the referee made an order refusing the claim of said landlord for said sum. On the 25th day of March, 1907, a petition of review of said order was filed in the said District Court in said cause, and on the 10th day of February, 1908, the court entered a decree affirming the order of the referee, whereupon the present petition to this court, for a review of said decree in matter of law, has been filed. The petitioner contends that the court has erred in holding that the distraint upon the goods and merchandise found on the demised premises, having been made within four months of the filing of the petition in bankruptcy, is invalid, by reason of the provisions of section 67f of the bankruptcy act of July 1, 1898 (chapter 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]). That section provides as follows:

"All levies, judgments, attachments or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him shall be deemed null and void, in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as part of the estate of the bankrupt," etc.

The question thus raised has been ably argued by the counsel for the trustee, in support of the finding of the referee and the decree of the court below affirming the same. We think, however, there was error therein.

Distress for rent in arrear, is one of the most ancient, as well as "one of the most efficient of the landlord's remedies for the collection of rent." It is in most of our states, as it was at common law, a right sui generis, belonging to the landlord whenever the relation of landlord and tenant existed. It appears to have been abolished in a few of the states, and in most of them its exercise has been regulated by statute. Its essential characteristics are, however, for the most part the same as existed at common law. In Pennsylvania, as at common law, the distress warrant issues directly from the landlord to his bailiff, who, if he happens to be a constable, is no less the agent and bailiff of the landlord than if he were a private person. The state law provides that, after the goods have been distrained, or levied upon, unless the same be replevied by the plaintiff within five days, the landlord may apply to the sheriff of the county, or to a constable, who is required to take proceedings for the sale of the said goods, or so much thereof as may be required for the satisfaction of the rent. In other respects, the right of the landlord remains for the most part as it was at common law. The right to distrain or levy upon all the goods upon the demised premises, whether those of the tenant or of a stranger, arises the moment the relation of landlord and tenant is established. It is a right in the nature of a lien, rather than a lien, until the goods are actually distrained under a landlord's warrant. It was originally in the nature of a property right in the reditus or return from the land,

reserved to the landlord. No suit or proceeding at law, whether in personam or in rem, in the proper sense of those words, was necessary for the assertion of this right. It belongs to that small category of personal rights, the assertion of which has always been independent of legal procedure; of which the right to abate a nuisance, under certain circumstances, and the right to distrain cattle damage feasant, are examples.

While there is no specific lien, except on the goods actually distrained under the landlord's warrant, all the goods on the demised premises are to be considered as being under a quasi pledge, which gives superiority to the specific lien established by the distraint. Such a lien is in no sense "obtained through legal proceedings." Nor is it within the spirit of the bankrupt law in this regard, as evidenced by other provisions thereof, as well as that of 67f, above quoted.

In re Kerby Dennis Co., 95 Fed. 116, 36 C. C. A. 677, where a statute of a state created a lien in favor of employés performing labor in the manufacture. of lumber, and provided that the debt or claim shall not remain a lien on the product, unless a statement thereof is filed within thirty days, and action begun within three months, it was held by the Circuit Court of Appeals for the Seventh Circuit, that the holders of such liens, perfected according to the statute against the estate of the employer in bankruptcy, are entitled to payment in full out of the proceeds of the property affected, in preference to claims for labor of the same kind which have not been preserved as the statute directs, although both classes of claims are equally within the description of claims for "wages," as to which the bankruptcy act declares that they shall "have priority and be paid in full out of bankrupt estates." Bankruptcy Law, § 64b. In its opinion, the court says:

"It is insisted, however, that the bankruptcy act does not preserve these liens. It is said that to hold them valid, would be in antagonism to subdivision 'f' of section 67 of the act. * * * But it is to be observed that the lien in the case before us was not obtained through 'legal proceedings.' It is a creature of the statute, arising from, and immediately upon. the performance of labor. The legal proceedings contemplated by the statute do not create a lien, but enforce a lien already existing. * * * It is thus clear to us, that the design of Congress was to protect all liens, whether arising by contract or by statute, and only to avoid those which are in fraud of the act, and those which have been secured by, and arise from, legal proceedings within the limited time specified before the bankruptcy."

In Austin v. O'Reilly, 2 Woods, 670, Fed. Cas. No. 665, there was a petition to the Circuit Court to review and revise an order of the District Court of the United States for the Southern District of Mississippi, sitting in bankruptcy, in which order the District Court had held that:

"In Mississippi a landlord is not entitled to preference for rent in a fund arising from the sale, by the tenant's assignee in bankruptcy, of personal property found on the demised premises; since, under the Mississippi statute, a landlord has no lien until he seizes the property, and since the claim does not come within any of the preferences created by the bankrupt act."

In an interesting opinion, in which he discusses the legal character of the landlord's right, both at common law and under such a state

statute as that of Mississippi, requiring an attachment to be issued by a court to perfect the landlord's lien, Mr. Justice Bradley, sitting in circuit, proceeds as follows:

"In some states, it is provided that, instead of making the distress himself, the landlord must procure a warrant from a magistrate or court, to be executed by an officer. But this regulation of the mode of exercising his right does not affect the nature of the right itself.

"It is common to call the right a lien, and yet it is not strictly such; for it does not attach to any specific article of property. The tenant, if a farmer, may, in due course of business, sell produce or cattle or other things; and if a merchant, he may in the same manner sell merchandise; and the sales, if made in good faith, will be valid, and the property sold will be free from the landlord's right of distress, if removed from the demised premises, and, in most states, without such removal. But if the sale be made for the purpose of depriving the landlord of his right, he may, by the English statutes and by the statutes of most states, follow the property within a reasonable time after its removal. Now if the landlord's rights were a strict lien, no valid sales could be made at all. Still, being commonly called a lien, and being a peculiar right in the nature of a lien, which is greatly relied on as an essential condition of all leases, and the subversion of which would work great injustice, and would in the end operate prejudicially to the interests both of the tenants and their creditors, by inducing landlords to require onerous conditions for their security, the Supreme Court of the United States, and most of the district and circuit courts, have regarded it as fairly to be classed as a lien within the true intent and meaning of the bankrupt act, and have allowed the landlord a priority over the general creditors to the extent of the goods subject to his right of distress. This right of the landlord has been regarded as peculiarly entitled to priority when by statute an execution creditor of the tenant is prohibited from removing the goods until he has paid the landlord's rent, or a reasonable amount (generally a year's rent), which may have accrued. Thus in Longstreth v. Pennock, 20 Wall. (U. S.) 575, 22 L. Ed. 451, the Supreme Court places special emphasis on this fact.

"In Mississippi, it is true, the landlord is obliged to sue out an attachment for the purpose of effecting a distress for rent; but when the attachment is sued out, his rights are the same in effect as those of the landlord at common law. That they are founded on and grow out of those rights is evident from the fact that he is not compelled to pursue his claim to judgment like other creditors. The attachment in his case is in the nature of an execution; or, more properly speaking, of a distress. He has the same right of priority over execution creditors, and the same right to prevent the removal of goods and to follow goods clandestinely removed, which exists in England and most of the other states."

In the case at bar, the landlord had exercised his right of distress before the filing of the petition in bankruptcy. The goods were distrained, as goods on the premises leased to McAlpine & Son, his tenants. His right was created by the contract of lease between him and McAlpine & Son, more than four months before the petition in bankruptcy, in behalf of the West Side Paper Company, which he had never recognized as his tenant. His lien arose out of the relationship of landlord and tenant between him and the McAlpines, and was not "obtained by legal proceedings," within the meaning of the bankrupt act.

The facts, therefore, of the case at bar, are stronger in favor of the landlord's right than are those of the cases just cited. The right of the petitioner to the whole of the fund realized by the receiver's sale of the goods and merchandise on the demised premises, and which

were distrained by the said petitioner on his landlord's warrant, prior to the filing of the petition in bankruptcy, must be sustained, and the decree of the court below is hereby reversed.