In re UNITED MOTOR CHICAGO CO.

HOWARD et al. v. CHICAGO TITLE & TRUST CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915.)

No. 2146.

BANKRUPTCY ⬬200—LANDLORD'S LIEN—ILLINOIS STATUTE.

Hurd's Rev. St. Ill. 1913, c. 80, §§ 16–23, 25, provide that a landlord may issue a distress warrant for rent in arrears, and by himself or agent levy the same on any personal property of the tenant found in the county; that the warrant shall then be immediately filed, with an inventory of the property distrained, with a justice of the peace or clerk of the court having jurisdiction, on which a summons shall issue for the tenant and be served as in cases of attachment; that the suit shall thereafter proceed as in attachment, and the warrant shall stand as a declaration and be amendable; that if defendant appears he may plead any set-off or other defense that would be proper in any form of action for rent; that if plaintiff succeeds he shall have a general judgment, enforceable by execution against any property of defendant, while if the latter establishes a set-off larger than plaintiff's claim he shall have judgment for the difference. Section 30 provides that property exempt by law from execution shall also be exempt from distraint, except crops grown or growing on the demised premises; and section 31 gives the landlord a lien on such crops. *Held*, that the statute, as construed by the Supreme Court of the state, except as to crops, does not create a lien in favor of a landlord, nor give him any preference over other creditors, prior to levy of a distress warrant, and that the lien or preference so acquired is one "obtained through legal proceedings," within the meaning of Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 564 (Comp. St. 1913, § 9651), and when so obtained against an insolvent within four months prior to his bankruptcy under such section is avoided by the adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 289, 296–300, 306–316; Dec. Dig. ⬬200.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

In the matter of the United Motor Chicago Company, bankrupt; the Chicago Title & Trust Company, Trustee. From an order denying a lien, Harold A. Howard and John C. Howard, trustees under the will of Sarah J. Howard, deceased, appeal. Affirmed.

This appeal is from an order of the District Court in bankruptcy proceedings denying the appellants' petition to establish a lien on funds in the hands of the trustee in bankruptcy. The claim of lien rests on unpaid rent, arising under a lease of premises occupied by the bankrupt in Chicago, Ill., for which personal property of the bankrupt had been seized by the appellants, as lessors, pursuant to section 16, c. 80, Revised Statutes of Illinois. Such levy was made five days prior to the commencement of proceedings in bankruptcy, but with notice of the fact that the bankrupt was then "insolvent and in contemplation of bankruptcy."

Norman K. Anderson, of Chicago, Ill., for appellants.
C. M. Cavenee, of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

⬬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SEAMAN, Circuit Judge. The rent for which the appellants claim a lien under their statutory proceedings for its enforcement accrued under a written lease between the appellants and the bankrupt, bearing date December 10, 1909, containing no provision for a lien in any form to secure payment of rentals, and thus the claim rests exclusively on the relation of landlord and tenant thereunder, as governed by the provisions of chapter 80, Revised Statutes of Illinois, for creation of the alleged lien for unpaid rent. It is obvious, therefore, that the ruling of this court in the bankruptcy case entitled In re Robinson & Smith, 154 Fed. 343, 83 C. C. A. 121, upholding a lien expressly created by written lease between the parties in Illinois, is inapplicable for support of the instant claim. Personal property of the bankrupt was seized by the appellants, pursuant to section 16 of the above-mentioned statute, five days prior to the commencement of bankruptcy proceedings and when the bankrupt was insolvent; and the issue upon the validity of the lien so acquired, as against proceeds in the hands of the trustee in bankruptcy arising from sale of such property, must ultimately hinge for solution on the effect of the Illinois statute for definition of the nature and inception of the lien.

These premises for the inquiry, however, are established by and under the present Bankruptcy Act: That all liens and preferences are recognized and preserved therein which are granted or acquired more than four months prior to bankruptcy, when free from taint and valid under the laws of the state; that the act preserves priority—section 64 (5)—for "debts owing to any person who by the laws of the states or the United States is entitled to priority"; that its policy likewise extends to the preservation of equitable liens and various statutory rights which are designated as inchoate or dormant liens, when their existence and rightfulness are established, and no provision of law is violated therein; and that—section 67f—"all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt," etc.

For application of the foregoing proposition to levies made for enforcement of liens asserted in favor of a landlord against personal property of the bankrupt, as tenant, for unpaid rent, two leading decisions under the present Bankruptcy Act upholding liens so obtained are cited and strongly relied upon for reversal of the order of the District Court herein—Henderson v. Mayer, 225 U. S. 631, 32 Sup. Ct. 699, 56 L. Ed. 1233, and In re West Side Paper Co., 162 Fed. 110, 89 C. C. A. 110, 15 Ann. Cas. 384 (C. C. A. 3d Circuit). The Henderson Case arose under and is necessarily governed by the statutory provisions of Georgia referred to in the opinion, and its doctrine, if applicable as well to the Illinois statute governing the present issue, would be decisive thereof in favor of the lien. In the West Side Paper Co. Case (cited with approval in the Henderson opinion) the issue arose under the Pennsylvania statute providing for the lien and

its enforcement, and the opinion clearly points out the effect of the provisions on which the ruling in favor of the lien is predicated. Thus the dual question is presented by this appeal: (1) Whether the doctrine settled alike by these rulings applies to the provisions of the Illinois statute; and, if not, (2) whether the instant statutory levy thereunder is within the meaning of section 67f of the Bankruptcy Act. The Illinois provisions plainly differ—as established by the authorities to be considered—both from those of Georgia and Pennsylvania and from the common-law rule, as reviewed in the above-mentioned opinions, and the force of distinctions therein appears from analysis of the definitions and rulings of each of these cases, as follows:

In Henderson v. Mayer, 'the opinion by Mr. Justice Lamar thus states in substance the effect of the Georgia statute: That it expressly (section 2787) "establishes liens in favor of landlords"; that, it gives them (section 3124) "power to distrain for rent as soon as the same is due"; that it declares (section 2795) that they "shall have a general lien on the property of the tenant liable to levy and sale * * * which dates from the levy of the distress warrant to enforce the same"; that "prior to levy it covers no specific property, and attaches only to what is seized under the distress warrant," and in this respect "is the full equivalent of a common-law distress, the lien of which is held not to be discharged by section 67f"—citing In re West Side Paper Co., supra. We understand the ruling thereupon, which upholds a lien obtained by levy of the statutory distress three days prior to bankruptcy proceedings, to rest on these propositions, as stated in substance in the opinion:

The Bankruptcy Act "was not intended to lessen rights which already existed, nor to defeat those inchoate liens given by statute, of which all creditors were bound to take notice. * * * As against them the landlord had from the beginning of the tenancy the right to a statutory lien, which had completely ripened and attached before the filing of the petition in bankruptcy. The priority arising from the levy of the distress warrant was not secured because Mayer had been first in a race of diligence, but was given by law because of the nature of the claim and the relation between himself as landlord and Burns as tenant. In issuing the distress warrant the justice acted ministerially. Savage v. Oliver, 110 Ga. 636 [36 S. E. 54]. The sheriff was not required to return it to any court, and no judicial hearing or action was necessary to authorize him to sell for the purpose of realizing funds with which to pay the rent. Such a lien was not created by a judgment nor 'obtained through legal proceedings.'"

In re West Side Paper Co., the opinion by Judge Gray, upholding a like levy under the Pennsylvania statute, aptly states the distinguishing feature of the statutory proceedings, as the groundwork of the decision, as follows:

"Distress for rent in arrear is one of the most ancient, as well as 'one of the most efficient, of the landlord's remedies for the collection of rent.' It is in most of our states, as it was at common law, a right sui generis, belonging to the landlord whenever the relation of landlord and tenant existed. It appears to have been abolished in a few of the states, and in most of them its exercise has been regulated by statute. Its essential characteristics are, however, for the most part the same as existed at common law. In Pennsylvania, as at common law, the distress warrant issues directly from the landlord to his bailiff, who, if he happens to be a constable, is no less the agent and

bailiff of the landlord than if he were a private person. The state law pro-vides that, after the goods have been distrained, or levied upon, unless the same be replevied by the plaintiff within five days, the landlord may apply to the sheriff of the county, or to a constable, who is required to take pro-ceedings for the sale of the said goods, or so much thereof as may be re-quired for the satisfaction of the rent. In other respects, the right of the landlord remains for the most part as it was at common law. The right to distrain or levy upon all the goods upon the demised premises, whether those of the tenant or of a stranger, arises the moment the relation of landlord and tenant is established. It is a right in the nature of a lien, rather than a lien, until the goods are actually distrained under a landlord's warrant. It was originally in the nature of a property right in the reditus or return from the land reserved to the landlord. No suit or proceeding at law, whether in per-sonam or in rem, in the proper sense of those words, was necessary for the assertion of this right. It belongs to that small category of personal rights, the assertion of which has always been independent of legal procedure; of which the right to abate a nuisance, under certain circumstances, and the right to distrain cattle damage feasant, are examples. While there is no specific lien, except on the goods actually distrained under the landlord's warrant, all the goods on the demised premises are to be considered as being under a quasi pledge, which gives superiority to the specific lien established by the distraint. Such a lien is in no sense 'obtained through legal proceed-ings.' Nor is it within the spirit of the bankrupt law in this regard, as evi-denced by other provisions thereof, as well as that of section 67f, above quoted."

The Illinois statute, however, not only in its terms, but through a long line of interpretations by the Supreme Court of the state, is not open, as we believe, to like construction with that involved and upheld in either of the above-mentioned cases, so that there doctrine in refer-ence to the effect of the Georgia and Pennsylvania statutes respectively for preservation of the lien cannot be deemed applicable for support of the levy in the case at bar. This exceptional character of the Illinois law is fundamental, as hereinafter pointed out, both under the express provisions of the statute and through the exclusion of the common-law rule for a landlord's lien in that state.

The statutory provisions, on which the claim of validity of the ap-pellants' levy must rest, are contained in chapter 80 of the Revised Statutes of Illinois, entitled "Landlord and Tenant," and the follow-ing sections thereof (Hurd's Rev. Stat. 1913) are pertinent:

"Sec. 16. In all cases of distress for rent, the landlord, by himself, his agent or attorney, may seize for rent any personal property of his tenant that may be found in the county where such tenant shall reside; and in no case shall the property of any other person, although the same may be found on the premises, be liable to seizure for rent due from such tenant.

"Sec. 17. The person making such distress shall immediately file with some justice of the peace, if the amount of the claim is within his jurisdiction, or with the clerk of a court of record of competent jurisdiction, a copy of the distress warrant, together with an inventory of the property levied upon.

"Sec. 18. Upon the filing of such copy of distress warrant and inventory, the justice of the peace or clerk shall issue a summons against the party against whom the distress warrant shall have been issued, returnable as other summons.

"Sec. 19. When it shall appear, by affidavit filed in the court where such proceeding is pending, that the defendant is a nonresident or has departed from this state, or on due inquiry cannot be found, or is concealed within this state, and the affiant shall state the place of residence of said defendant, if known, and if not known, that upon diligent inquiry he has not been able to ascertain the same, notice may be given, if the suit is before a justice of

the peace, as in cases of attachment before justices, or if in a court of record, as in attachment cases in such courts.

"Sec. 20. The suit shall thereafter proceed in the same manner as in case of attachment before such court or justice of the peace: Provided, that it shall not be necessary for the plaintiff in any case to file a declaration, but the distress warrant shall stand for a declaration and shall be amendable, as other declarations: Provided, that no such amendment shall in any way affect any liabilities that may have accrued in the execution of such warrant.

"Sec. 21. The defendant may avail himself of any set-off or other defense which would have been proper if the suit had been for the rent in any form of action and with like effect.

"Sec. 22. If the plaintiff succeeds in his suit, judgment shall be given in his favor for the amount which shall appear to be due him.

"Sec. 23. When the defendant has been served with process or appears to the action, the judgment shall have the same force and effect as in suits commenced by summons, and execution may issue thereon, not only against the property distrained, but also against the other property of the defendant. But the property distrained, if the same has not been replevied or released from seizure, shall be first sold."

"Sec. 25. If the judgment is in favor of the defendant, he shall recover costs and have judgment for the return of the property distrained, unless the same has been replevied or released from such distress. And if a set-off is interposed, and it appears that a balance is due from the plaintiff to the defendant, judgment shall be rendered for the defendant for the amount thereof."

"Sec. 30. The same articles of personal property which are, by law, exempt from execution, except the crops grown or growing upon the demised premises, shall also be exempt from distress for rent.

"Sec. 31. Every landlord shall have a lien upon the crops grown or growing upon the demised premises for the rent thereof, whether the same is payable wholly or in part in money or specific articles of property or products of the premises, or labor, and also for the faithful performance of the terms of the lease. Such lien shall continue for the period of six months after the expiration of the term for which the premises were demised."

The above sections 16, 17, 18, 19, 30, and 31 are preserved from like sections in force in 1874 (mainly from R. S. 1845), but provisions of the other sections, governing the procedure through and upon levy of the distress warrant, were enacted in the Revised Statutes of 1874 and subsequent amendments, and may become decisive of the issue, whether such levy is within the inhibition of section 67f of the Bankruptcy Act. The amendatory provisions, however, are without such force if a lien or other form of security existed in Illinois in favor of the appellants (as landlord), either under the other provisions or under the general common-law rule, so that the primary inquiry must be to ascertain the status of the indebtedness for rent under the Illinois law—excepting as provided by section 31 for a lien upon growing crops, not involved in this controversy—and we assume for its consideration that these twofold tests are involved therein: Whether in effect the indebtedness was either (a) secured by a lien during the term of tenancy, or (b) otherwise secured as preferential over other creditors of the tenant. Upon the question thus stated, in the broadest possible aspect of preferential right, we believe the statute furnishes a conclusive answer, both through its terms and in well-settled judicial rulings on its effect.

In reference to the above-mentioned sections 16, 17, 18, and 30, which were in force from and after 1845, it is to be observed that

no lien is mentioned, nor security in any form beyond such right as may be inferred from their provision for "distress for rent"; that section 31 (of like origin) contains the only declaration of lien throughout the statute, and is applicable alone to "crops grown or growing" upon the premises; that the right provided to distrain by seizing "any personal property of his tenant that may be found in the county," confers no preference over other creditors beyond the mere method of levy, because property "exempt from execution" (section 30) is also "exempt from distress for rent"; and that like benefit is open to other creditors through attachment upon mesne process.   On their face, therefore, we are impressed with no view which would sanction an affirmative answer to the foregoing question, in either of its phases. And the further enactments of 1874, governing the distress warrant and procedure thereunder appear to sanction the view, that both levy and procedure are entirely judicial in their nature, in no sense within the ministerial distress provisions involved, either at common law or under the statutes of Georgia and Pennsylvania, in the cases respectively above cited.   The Illinois decisions, however, must be accepted as controlling for their interpretation and we believe them to be substantially harmonious in settlement thereof.

Upon the fundamental inquiries of statutory lien or security in any form and of nonapplicability in Illinois of the common-law rule respecting a landlord's lien and right of distress for rent, two of the more recent cases in the extended line of authorities may well be referred to for their pertinent summarization of the Illinois rule.   In First Nat. Bank of Joliet v. Adam, 138 Ill. 483, 499, 28 N. E. 955, 957, both questions were directly involved, and it was expressly ruled:

"Independently of the provisions of the lease, a landlord in this state has no common-law lien upon the property of his tenant for rent; and he has no statutory lien except as to growing crops."

In Kellogg Newspaper Co. v. Peterson, 162 Ill. 158, 161, 44 N. E. 411, 412 (53 Am. St. Rep. 300) like questions were involved and the effect of the authorities is thus stated:

"A landlord can in this state, with the above exception" as to growing crops "only acquire a lien by commencing proceedings.   Until he does so the tenant is as much the owner of his effects as any other person who owns property and owes debts.   No dormant or secret lien of a landlord exists against a tenant's property until a seizure by distress or other proceedings."

For the above ruling in the first-mentioned case the opinion cites (with other precedents) Herron v. Gill, 112 Ill. 247; and that case is of special value for its mention of the groundwork of inapplicability of the common-law rule therein, namely:

"At common law, before the adoption of the statute of 8 Anne, c. 14, the landlord had no lien of any kind, but only a right to distrain" (citing authorities); that such statute is not in force in Illinois, "being of a date later than the fourth year of James I," adopted in that state as limiting the period from which the rules of common law shall be applicable therein; and that "if ever in force here as a part of the laws of Virginia, it has been repealed by implication, or superseded by subsequent acts of our Legislature intended as revision of the whole subject."

It also holds that:

"The present statute, by giving the landlord a lien only upon crops growing or grown, by implication excludes the idea of a lien on any other property of the tenant."

Citations from or review in this opinion of the line of earlier cases —up to and including Hadden v. Knickerbocker, 70 Ill. 677, 22 Am. Rep. 80, cited in the above cases, all arising prior to the Revision of 1874—declaratory of the rule that no statutory lien was conferred in Illinois, is deemed unnecessary, for these reasons: That sufficient review thereof appears in Morgan v. Campbell, 22 Wall. 381, 391, 22 L. Ed. 796, and that the ruling therein upon their effect is cited and reaffirmed in both of the above-mentioned opinions in the First Nat. Bank and Kellogg Newspaper Co. Cases. In Morgan v. Campbell the issue thereupon arose under the Bankruptcy Act of 1867, but the levy in question was "made after the institution of bankruptcy proceedings, but before the decree in bankruptcy was rendered," so that the present issue is not directly involved in the rulings. In the view above stated, however, the opinion is of undeniable force for its conclusion that the laws of Illinois (prior to 1874) did not confer "upon the landlord a statutory lien upon the personal property of the tenant in the county prior to the levy of the warrant," nor (in effect) any form of security over other creditors.

We believe, therefore, that the authorities concur in establishing the rule in Illinois, that no lien or preferential right exists therein in favor of the landlord upon which a valid preference may be predicated through the distress levy in question.

The further contention for reversal is, in substance, this: That the above-mentioned Henderson and West Side Paper Co. decisions are controlling for the proposition that such distress levy is not within the meaning of section 67f of the Bankruptcy Act, nor otherwise violative of the purposes of the act. While the distinctions above pointed out in those cases leave no room, as we believe, for application of their doctrine under the above-stated Illinois rule, the nature of the Illinois distress levy, as a judicial proceeding—and thus not within their rulings—is established both by the provisions of the present statute and through its judicial interpretation. The distress for rent involved in those cases, as clearly defined in the opinions, was of the common-law nature, "a right sui generis, belonging to the landlord whenever the relation of landlord and tenant existed," for which "no suit or proceeding at law, whether in personam or in rem, in the proper sense of those words, was necessary for the assertion of this right." For its exercise the landlord was the sole actor (through his own agents) for sale of the goods, if not replevied by the tenant, and thus it "belongs to that small category of personal rights, the assertion of which has always been independent of legal procedure." In re West Paper Co., supra.

On the other hand, the Illinois provisions for enforcement of rent plainly constituted a suit, after the amendments of 1874, if not prior thereto. In Morgan v. Campbell, supra, the statutory distress warrant of the earlier provision is so defined, as "in the nature of mesne

process," if not "strictly speaking an attachment upon mesne process," under distinctions therein pointed out in the opinion. It cites approvingly the opinion of Judge Drummond, in Re Joslyn, 2 Biss. 235, Fed. Cas. No. 7,550, of like import, in a case directly involving such issue; and it is noteworthy, to say the least, that in the light of these decisions, the only changes in the statute thereafter adopted by the Legislature related to procedure under the warrant and all tended to establish the levy as institution of a suit. These rulings that the distress proceedings under the prior statute constitute a suit were clearly supported by the Illinois authorities—Lapointe v. Stewart, 16 Ill. 291; Wade v. Halligan, 16 Ill. 507—and the first-mentioned case in the opinion aptly points out the distinctions from the common-law distress upon which this statutory distress is held to be a judicial proceeding. Under the amendments of 1874, however, the issue directly arose in Bartlett v. Sullivan, 87 Ill. 219, whether the "proceeding by a distress warrant must be regarded as a suit for the collection of rent, in which the plaintiff has the right to invoke the aid" of the general Practice Act; and the opinion reviews the several amendatory provisions and holds that "this proceeding is made by the statute a suit, and it was brought upon a contract for payment of money" and is therefore within the Practice Act. No Illinois decision is called to our attention which tends to modify these interpretations, nor are we advised of any ground for doubting their applicability and force for settlement of the effect of the statutory provisions.

The contention that the distress warrant, as the mere personal act of the landlord, does not amount to judicial process, is beside the inquiry if assumed to be tenable, for the reason that the statute requires (section 17) that "the person making such distress shall immediately file with" the proper court "a copy of the distress warrant, together with an inventory of the property levied upon"; that upon filing thereof (section 18) the court "shall issue a summons against the" adverse party; that (section 20) "the suit shall thereafter proceed in the same manner as in case of attachment," and "the distress warrant shall stand for a declaration and shall be amendable as other declarations"; that (section 21) the defendant may interpose set-off or other defenses which would be available in a suit for rent in any other form of action; and that (section 23) "the judgment shall have the same force and effect as in suits commenced by summons, and execution may issue thereon"—through which alone the unpaid rent is to be realized, not through the landlord's sale under a sui generis right to be court and sheriff—"not only against the property distrained, but also against the other property of the defendant." Thus the levy under the warrant institutes the suit (for recovery of rent) within the well-recognized meaning of judicial process, and the fact that neither warrant nor levy are made by an officer of the court is without force. In that respect the authorization to proceed thus far, either personally or by personal agent, is merely equivalent to that of Wisconsin (and other so-called Code states), whereby the suit is instituted by a summons issued by the plaintiff, which may be served upon the adverse party with or without the intervention of an officer.

We are of opinion, therefore, that the appellants' lien claim in controversy rests exclusively on the statutory distress levy above defined; and that section 67f of the Bankruptcy Act bars recovery thereupon. The order of the District Court accordingly is affirmed.