### JONES v. FORD et al.

### In re MORRIS.

#### (Circuit Court of Appeals, Eighth Circuit. October 14, 1918.)

#### No. 193.

1. **BANKRUPTCY ⚶200(3)—PREFERENCE—LANDLORD'S ATTACHMENT FOR RENT.**
An attachment for rent, right to which is given by Rev. St. Mo. 1909, § 7893, but which, under section 7897, must be followed by determination of the rights of the parties by proceeding in court, and then by execution, is not the equivalent of a common-law distress for rent, and so does not give the landlord's claim a preference, but, being within four months of petition in involuntary bankruptcy, is void under Bankruptcy Act, § 67f (Comp. St. 1916, § 9651).

2. **BANKRUPTCY ⚶444—PETITION TO REVISE—CONTENTIONS AVAILABLE—RESPONDENTS.**
Insistence of respondents, on petition of trustee in bankruptcy to revise order of District Court giving preference to their claim, thereby reversing order of referee, that the bankruptcy proceedings were not adversary, cannot be considered, not being covered by certificate of referee or order on review.

Petition to Revise Order of the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

In the matter of Sarah Morris, bankrupt. Petition by Joseph M. Jones, trustee, to revise the order of the District Court, on review,

⚶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

reversing the order of the referee allowing the claim of Alfred Ford and another as a general claim only. Petition sustained, with directions.

I. J. Ringolsky, of Kansas City, Mo. (M. L. Friedman, of Kansas City, Mo., on the brief), for petitioner.

Frank Titus, of Kansas City, Mo., for respondents.

Before HOOK, CARLAND, and STONE, Circuit Judges.

STONE, Circuit Judge. This is a petition by a trustee in bankruptcy to revise an order of the District Court giving preference to respondents' claim, thereby overruling and reversing the order of the referee, which had denied such preference and allowed it as a general claim only.

The claim in question was for rent of a store building where the bankrupt was conducting a mercantile business in Kansas City, Mo. Before the involuntary petition in bankruptcy was filed, the respondents secured, in accordance with the Missouri statutes, an attachment levy by the state sheriff, who took possession of the chattels in question, a part of the stock in trade. Later they were delivered by him, under an order of the United States District Court, to the receiver appointed in this bankruptcy proceeding. Respondents presented and prayed for an allowance of their claim as a preferred claim, which preference was denied by the referee, and upon a petition for review allowed by the District Court. There are only two points properly before the court under this petition to revise: Respondents' claim that petitioner is not an interested party, entitled to a revision petition under the bankruptcy statute; and petitioner's claim that the preference was improperly allowed by the trial court.

The petitioner is the trustee of the estate, and as such is representative of the estate, and interested in the allowances of claims and preferences. It is part of his duty to see that the assets are properly distributed among the creditors who file claims therefor. This comprehends the matter of allowance of claims, which naturally includes the allowance of preferences.

[1] The theory upon which the trial court allowed the preference was that, under the Missouri statute, an attachment for unpaid rent was the equivalent of a distress for rent, where the levy of the attachment perfected an existing inchoate lien, which did not require a judicial proceeding to make it effective. The petitioner contends that the attachment for rent authorized by the Missouri statute (hereinafter set out) is in no sense analogous to distress for rent, but is merely the creation of an additional ground for attachment, requiring a judicial proceeding to make its lien effective. As such he contends it is avoided by the Bankruptcy Act of July 1, 1898 (30 Stat. 564, c. 541), section 67f of which declares:

"That all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt. * * *" Compiled Statutes 1916, § 9651.

The common-law distress for rent was a product of early feudal tenure. It is generally regarded as one of those instances in which the right or remedy, however it may be classified, was in the hands of the party, without the necessity of judicial aid. It may be that absolute accuracy would avoid this statement; however, if any judicial action was necessary to initiate or perfect the early distress, it belonged, not to royal tribunals, but to manorial courts, which meant, of course, the court of the lord who was enforcing the distress. History of English Law, by Pollock & Maitland, vol. 1, p. 589, and volume 2, p. 576.

Broadly defined, common-law distress allowed the landlord to go upon the demised premises and seize anything he might there find, irrespective of its ownership, and hold the same without sale or usage as a gage until the rental was paid. Interesting discussion of this remedy may be found in History of English Law, by Pollock & Maitland, vol. 1, pp. 353–355, 589, and volume 2, pp. 117, 130, 575–578; also in 16 R. C. L. 1003. Breaches of the peace were liable to occur in the enforcement of this summary method. To prevent such, in most, if not all, jurisdictions where distress is substantially preserved to-day, there are statutes providing that the seizure shall be by some official. Statutes have to an extent also altered the common-law distress in certain respects—such as limiting seizure to the property of the tenant, permitting seizure of such property away from the demised premises, and allowing sale of the property to satisfy the demand. But none of these statutes has annihilated the fundamental characteristic of distress, to wit, that the landlord shall, directly or indirectly, seize and control the gage without aid of judicial proceedings to establish his right.

The common-law distress for rent has never been countenanced in Missouri (Crocker v. Mann, 3 Mo. 472, 26 Am. Dec. 684), and, so far as we have been able to find, no statutory substitute therefor has been employed, except in some very early statutes applying to particular communities, where a "distress warrant" was for a time authorized (Quinnett v. Washington, 10 Mo. 53), but is no longer permitted. There are statutes giving liens upon crops and nursery stock grown on demised premises. R. S. Mo. 1909, §§ 7888, 7902. In other instances the landlord has been put to statutory actions for rent (Crocker v. Mann, 3 Mo. 472, 475), or for speedy possession of the premises (R. S. Mo. 1909, § 7904; Welch v. Ashby, 88 Mo. App. 400, 404). In aid of rent recovery, an attachment is allowed where the actions of the tenant are such as to justify the belief that the collection of the rent will be endangered, hindered, or delayed, or where the unpaid rent is overdue and demand has been made therefor. R. S. Mo. 1909, § 7896. The sections referring to attachment are as follows:

"Sec. 7896. *Attachment for Rent will Lie, When—How Obtained.*—Any person who shall be liable to pay rent, whether the same be due or not, or whether the same be payable in money or other thing, if the rent be due within one year thereafter, shall be liable to attachment for such rent, in the following instances: First, when he intends to remove his property from the leased or rented premises; second, when he is removing his property from the leased or rented premises; third, when he has, within thirty days, re-

moved his property from the leased or rented premises; fourth, when he shall in any manner dispose of the crop, or any part thereof, grown on the leased or rented premises, so as to endanger, hinder or delay the collection of the rent; fifth, when he shall attempt to dispose of the crop, or any part thereof, grown on the leased or rented premises, so as to endanger, hinder or delay the collection of the rent; sixth, when the rent is due and unpaid, after demand thereof: Provided, if such tenant be absent from such leased premises, demand may be made of the person occupying the same. The person to whom the rent is owing, or his agent, may, before a justice or the clerk of a court of record having jurisdiction of actions, by attachment in ordinary cases, of the county in which the premises lie, make an affidavit of one or more of the foregoing grounds of attachment, and that he believes unless an attachment issue plaintiff will lose his rent; and upon the filing of such affidavit, together with a statement of plaintiff's cause of action, such officer shall issue an attachment for the rent against the personal property, including the crops grown on the leased premises, but no such attachment shall issue until the plaintiff has given bond, executed by himself or by some responsible person for him, as principal, in double the amount sued for, with good security, to the defendant to indemnify him if it appear that the attachment has been wrongfully obtained: Provided, if any person shall buy any crop grown on demised premises upon which any rent is unpaid, and such purchaser has knowledge of the fact that such crop was grown on demised premises, he shall be liable in an action for the value thereof, to any party entitled thereto, or may be subject to garnishment at law in any suit against the tenant for the recovery of the rent.

"Sec. 7897. *Proceedings, Same as What.*—Proceedings on all attachments issued under this chapter shall be the same as provided by law in case of suits by attachment. * * *

"Sec. 7902. *What Property Exempt From Rent.*—Property exempt from execution shall be also exempt from attachment for rent, except the crop grown on the demised premises on which the rent claimed is due."

In our judgment these sections of the statute (sections 7896 and 7897) were not intended to and do not create any lien, nor recognize the existence of any inchoate lien. They give to landlords additional grounds for attachment, which grounds are connected with the tenancy or payment of rent. It may be suggestive that the affidavit for attachment filed herein contains six grounds for attachment. The first three are under the general statute (R. S. Mo. 1909, § 2294); the other three under the landlord section (section 7896, supra). Such an attachment must take the course of any ordinary attachment suit under the statutes (R. S. Mo. 1909, §§ 2294–2359, 7897), and merely serves to sequester and control in the custody of the court the means of satisfying any judgment later secured upon the merits. There is no right of sale of the levied property until after a determination of the rights of the parties by a court in a legal proceeding, and then only upon execution (R. S. Mo. 1909, § 2351), and only such property as is subject to execution is liable to attachment for rent, except crops grown upon the premises (section 7902, supra).

This case is distinguishable from Henderson v. Mayer, 225 U. S. 631, 32 Sup. Ct. 699, 56 L. Ed. 1233, In re West Side Paper Co., 162 Fed. 110, 89 C. C. A. 110, 15 Ann. Cas. 384, Id. (D. C.) 159 Fed. 241, Austin v. O'Reilly, 2 Woods, 670, Fed. Cas. No. 665, and In re Morris, 159 Fed. 591, relied upon by the trial court; also from In re Mock (D. C.) 228 Fed. 95, In re City Drug Store (D. C.) 224 Fed. 133, In re Floyd Scott Co. (D. C.) 224 Fed. 987, In re Place (D. C.) 224 Fed. 779, 785, and In re Printograph Co. (D. C). 210 Fed. 567, 569, cited by respondents. The Henderson Case dealt with a Georgia statute

expressly (225 U. S. 638, 639, 32 Sup. Ct. 701, 56 L. Ed. 1233) establishing "liens in favor of landlords," and giving them "power to distrain for rent as soon as same is due." Under such proceeding:

"The sheriff was not required to return it to any court, and no judicial hearing or action was necessary to authorize him to sell for the purpose of realizing funds with which to pay the rent. Such a lien was not created by a judgment nor 'obtained through legal proceedings.'"

In re West Side Paper Co. is a case purely of distress under the Pennsylvania law, where, as said by the court (162 Fed. 112, 89 C. C. A. 112, 15 Ann. Cas. 384):

"No suit or proceeding at law, whether in personam or in rem, in the proper sense of those words, was necessary for the assertion of this right. It belongs to that small category of personal rights, the assertion of which has always been independent of legal procedure, of which the right to abate a nuisance, under certain circumstances, and the right to distrain cattle damage feasant, are examples."

Austin v. O'Reilly is also an instance of distress under a Mississippi statute; the court saying:

"In Mississippi, it is true, the landlord is obliged to sue out an attachment for the purpose of effecting a distress for rent; but when the attachment is sued out, his rights are the same in effect as those of the landlord at common law. That they are founded on and grow out of those rights is evident from the fact that he is not compelled to pursue his claim to judgment like other creditors. The attachment in his case is in the nature of an execution; or, more properly speaking, of a distress."

In re Morris is of doubtful application, but at most is merely an application of the Pennsylvania statute discussed in Re West Side Paper Co., supra.

The Mock, City Drug Store, and Printograph Cases were on the district, and dealt, respectively, with the Pennsylvania, Georgia, and Mississippi laws discussed above. We think the Place and Floyd Scott Cases inapplicable.

[2] An insistence of respondents that the bankruptcy proceedings were not adversary cannot be considered, because, among other reasons, not covered by the certification of the referee or the order on review.

The petition for revision is sustained, with directions to the trial court to revise its order allowing respondents' claim as a preference into an allowance as a general claim against the bankrupt.