# HENDERSON, TRUSTEE IN BANKRUPTCY OF BURNS, v. MAYER.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 219.    Argued April 19, 1912.—Decided June 7, 1912.

The provisions of the Bankruptcy Act of 1898 preventing preferences, apply not only to mortgages and voluntary transfers but also to preferences obtained through legal proceedings; but the act was not intended to lessen rights already existing nor to defeat inchoate liens given by statute of which all creditors were bound to take notice.

The general lien given by the laws of Georgia to the landlord on the property of the tenant is the equivalent, as to goods levied on by distress warrant, to the common law distress; while it does not ripen into a specific lien until the distress warrant is issued, it exists from

the time of the lease, and the lien of the distress warrant is not one obtained through legal proceedings within the meaning of the anti-preference provisions of the Bankruptcy Act.

Under the Bankruptcy Act of 1867 a statutory attachment for rent in the nature of a landlord's distress warrant levied within the preference period was not nullified or discharged by the bankruptcy proceedings and there is nothing in the act of 1898 opposed to this conclusion.

The general provisions of the Bankruptcy Act of 1898 indicate a purpose and intent, as against general creditors, to preserve rights such as those given by the Georgia statute to landlords even though not enforced until within four months of the bankruptcy.

175 Fed. Rep. 633, affirmed.

SAMUEL MAYER owned a plantation in Dooley County, Georgia, which he rented to Joseph Burns for one year. The rent not having been paid at maturity, Mayer, on Nov. 13, 1908, made an affidavit in conformity with the statute, and a justice of the peace thereupon issued a distress warrant, which, on the same day, was levied upon the cotton, corn and other products of the place. The crops found on the premises being, apparently, insufficient to pay what was due, the sheriff, at the same time, levied upon other property by virtue of § 2795 of the Code of Georgia, which declares that "Landlords shall have a special lien for rent on crops made on land rented from them, superior to all other liens except liens for taxes . . . and shall also have a general lien on the property of the debtor, liable to levy and sale, and such general lien shall date from the time of the levy of a distress warrant to enforce the same."

Three days after the levy a petition in bankruptcy was filed against Burns, the tenant, who was subsequently adjudged a bankrupt. The trustee, when elected, obtained possession of all the property seized by the sheriff, and subsequently sold it in the due administration of the estate. The proceeds of the cotton and corn were paid over to Mayer, it being conceded that the Landlord's

Special Lien on the crops had not been affected by the bankruptcy proceedings.

Mayer also claimed that, by virtue of his general lien, he was entitled to have the balance of the rent paid out of the proceeds arising from the sale of the other property levied on, and filed his intervention to secure such an order. The trustee's objection was sustained by the referee on the ground that the Landlord's General Lien was discharged because it had been "obtained by legal proceedings" or levy made three days before the filing of the petition in bankruptcy. His ruling was reversed by the District Court (175 Fed. Rep. 633). That judgment was affirmed by the Circuit Court of Appeals without opinion. The case was then brought here by writ of certiorari, granted at the instance of the trustee, who claims that under the Georgia Code the landlord had no lien on the property prior to the levy of the distress warrant, and that whatever right had been acquired by that seizure was discharged by § 67f, which declares that "all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him shall be null and void in case he is adjudged a bankrupt."

*Mr. Orville A. Park*, with whom *Mr. George S. Jones* and *Mr. Merrel P. Callaway* were on the brief, for petitioner:

The Georgia law must govern the bankruptcy court sitting in that State as to what liens are recognized in Georgia and how and when they arise or are obtained. Collier on Bkcy. (8th ed.), 741.

The construction placed upon a state statute by the highest court in the State will be adopted by the Federal court when called upon to construe such statute.

A landlord's general lien dates from the time of the levy of a distress warrant to enforce the same. Ga. Code

1895, § 2795; Ga. Code 1910, § 3340; *Hobbs* v. *Davis*, 50 Georgia, 214; *Johnson* v. *Emanuel*, 50 Georgia, 590; *Elam* v. *Hamilton*, 69 Georgia, 736; *Thornton* v. *Wilson*, 55 Georgia, 608; *Jones* v. *Howard*, 99 Georgia, 451. *Loudon* v. *Blandford*, 56 Georgia, 150, can be distinguished.

The Federal court administers the law of the State in conformity with the decisions of the state court. *Re Dougherty Co.*, 109 Fed. Rep. 480. *Re Burns*, 175 Fed. Rep. 633; *Re V. D. L. Co.*, 175 Fed. Rep. 635, are directly opposed to both the letter and the spirit of the Georgia statute and to the decisions of the Georgia court of final resort.

If the lien was created or obtained more than four months prior to the adjudication in bankruptcy, although completed and enforced by a judgment within the four months' period, it is entitled to priority. If created or obtained within the four months, it is invalidated. *Metcalf* v. *Barker*, 187 U. S. 165; *Morgan* v. *Campbell*, 22 Wall. 381. *Re Robinson & Smith*, 154 Fed. Rep. 343, distinguished.

The question presented is one belonging to the local law of Georgia. *Longstreth* v. *Pennock*, 20 Wall. 575.

*Mr. Arthur H. Codington* for respondent:

Except in their rank in relation to other statutory liens, the special and general lien given by the Georgia law in every material respect are alike, and in each there is a legal proceeding for its enforcement, namely, a distress warrant. Ga. Code, 1895, §§ 2795–2797.

The general right of the landlord is not vacated by bankruptcy, but is entitled to be paid as a priority. 2 Tiffany on Landlord & Tenant, 1925; *Austin* v. *O'Reilly*, 2 Woods, 670; 18 Am. & Eng. Ency. Law (2d ed.), 426–432.

The right of the landlord against the goods and chattels of his tenant inheres in the relationship of the parties and the statutes themselves. This lien or right is not founded

upon the legal proceedings, which are merely the machinery for its enforcement. 24 Cyc. of Law & Proc. 1249, 1250, and cases cited; *Sims* v. *Price*, 123 Georgia, 97; *Cohen* v. *Broughton*, 54 Georgia, 296; *Tyner* v. *Slappey*, 74 Georgia, 364.

The Bankruptcy Act preserves and gives effect to all priorities and liens which are not preferential or in fraud of the act and which are recognized by the several States.

The trustee stands in the shoes of the bankrupt as to the property of the bankrupt, which is charged with all legitimate priorities and liens. Collier on Bkcy. (7th ed.), 741, 742, 761; *Humphrey* v. *Tatman*, 198 U. S. 90, 92–95; *Hauselt* v. *Harrison*, 105 U. S. 401–408; *York Mfg. Co.* v. *Cassell*, 201 U. S. 344, 351–353; *Bacon* v. *Int. Bank*, 131 U. S. ccxvi; *Longstreth* v. *Pennock*, 20 Wall. 576.

A lien is not restricted to a right reduced to possession or upon specific property. It may be a simple right or charge against property. 2 Story, Eq. Jur., § 1215; *The Menominee*, 36 Fed. Rep. 199; 2 Tiffany, L. & T. 1898.

The landlord's rights enforced by distress warrant are not divested by the bankruptcy of the tenant within four months thereafter, the lien of the landlord being based on the relationship of landlord and tenant and not being one "obtained by legal proceedings" within the meaning of § 67f of the Bankruptcy Act. *In re Robinson & Smith*, 154 Fed. Rep. 343; *In re West Side Paper Co.*, 162 Fed. Rep. 110. See *In re Hoover*, 113 Fed. Rep. 136; *Wilson* v. *Penn. Trust Co.*, 114 Fed. Rep. 742; *In re Duble*, 117 Fed. Rep. 794; *In re Pittsburg Drug Co.*, 164 Fed. Rep. 482; *In re Belknap*, 129 Fed. Rep. 646; *In re Mitchell*, 116 Fed. Rep. 87; *In re Bishop*, 153 Fed. Rep. 304; *Malcomson* v. *Wappoo Mills*, 85 Fed. Rep. 907, 910. And see, also, *In re Hersey*, 171 Fed. Rep. 100; *In re Bayley*, 177 Fed. Rep. 522; *In re Bourlier C. & R. Co.*, 133 Fed. Rep. 958; *In re Morris*, 159 Fed. Rep. 591; *In re Seebold*, 105 Fed. Rep. 910; *Longstreth* v. *Pennock*, 20 Wall. 575–577; *Marshall* v.

*Knox*, 16 Wall. 551; *Schall* v. *Kinsella*, 117 Louisiana, 687; *In re Wynne*, Fed. Cas. No. 18117; *In re Trim*, Fed. Cas. No. 14174; *In re Appold*, Fed. Cas. No. 499; *In re Bowne*, Fed. Cas. No. 1741; *In re Dunham*, Fed. Cas. No. 4145; *In re Hoagland*, Fed. Cas. No. 6545; *In re Rose*, Fed. Cas. No. 12043; *Lambert* v. *De Saussure*, 4 Rich. L. 248; *Austin* v. *O'Reilly*, 2 Woods, 670; Fed. Cas. No. 665.

The courts likewise have sustained similar priorities or liens, such as those of laborers, materialmen and mechanics. *In re Bennett*, 153 Fed. Rep. 673; *Central Trust Co.* v. *Richmond &c. R. Co.*, 68 Fed. Rep. 90; *In re Laird*, 109 Fed. Rep. 550; *In re Falls City Mfg. Co.*, 98 Fed. Rep. 592; *In re Emslie*, 102 Fed. Rep. 291; *Duplan Silk Co.* v. *Spencer*, 115 Fed. Rep. 689; *In re Kerby Dennis Co.*, 95 Fed. Rep. 116; *In re Lewis*, 99 Fed. Rep. 935; *In re Grissler*, 136 Fed. Rep. 754; *In re Dey*, Fed. Cas. No. 3871; *In re Georgia Handle Co.*, 109 Fed. Rep. 632; *Kane Co.* v. *Kinney*, 174 N. Y. 69.

The Georgia decisions also support respondent's contentions. *Loudon* v. *Blandford*, 56 Georgia, 153; *Hight* v. *Fleming*, 74 Georgia, 592; *Davis* v. *Meyers*, 41 Georgia, 95; *Boehm* v. *Nelson*, 61 Georgia, 441; *Talliaferro* v. *Pry*, 41 Georgia, 622; *Crine* v. *Davis*, 68 Georgia, 138. *Hobbs* v. *Davis*, 50 Georgia, 214; *Johnson* v. *Emanuel*, 50 Georgia, 590; *Elam* v. *Hamilton*, 69 Georgia, 736; *Thornton* v. *Carver*, 80 Georgia, 397; *Lancaster* v. *Whiteside*, 108 Georgia, 801, can be distinguished.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The provisions of the Bankruptcy Act, preventing an insolvent from giving or the creditor from securing preferences for preëxisting debts, apply not only to mortgages and transfers voluntarily made by the debtor, but also to those preferences which are obtained through legal pro-

ceedings, whether the lien dates from the entry of the judgment, from the attachment before judgment, or, as in some States, from the levy of execution after judgment. But the statute was not intended to lessen rights which already existed, nor to defeat those inchoate liens given by statute, of which all creditors were bound to take notice and subject to which they are presumed to have contracted when they dealt with the insolvent.

Liens in favor of laborers, mechanics and contractors are of this character; and although they may be perfected by record or foreclosure within four months of the bankruptcy, they are not created by judgments, nor are they treated as having been "obtained through legal proceedings," even when it is necessary to enforce them by some form of legal proceeding. The statutes of the various States differ as to the time when such liens attach, and also as to the property they cover. They may bind only what the plaintiff has improved or constructed; or they may extend to all the chattels of the debtor, or "all the property involved in the business." *In re Bennett,* 153 Fed. Rep. 673.

In some cases the lien dates from commencement of the work, or from the completion of the contract. In others, prior to levy they are referred to as being dormant or inchoate liens, or as "a right to a lien." *In re Bennett,* 153 Fed. Rep. 677; *In re Laird,* 109 Fed. Rep. 550. But the courts, dealing specially with bankruptcy matters, have almost uniformly held that these statutory preferences are not obtained through legal proceedings, and, therefore, are not defeated by § 67f, even where the registration, foreclosure or levy necessary to their completion or enforcement was within four months of the filing of the petition in bankruptcy.

Similar rulings have been made where the landlord has only a common law right of distress. *In re West Side Paper Co.,* 162 Fed. Rep. 110. This is often referred to as a lien,

but it is "only in the nature of security." 3 Black. Com.
18. The pledge, or quasi-pledge, which the landlord is
said to have is, at most, only a power to seize chattels
found on the rented premises. These he could take into
possession and hold until the rent was paid. *Doe ex dem
Gladney* v. *Deavors*, 11 Georgia, 79, 84. But before the
distraint the landlord at common law has "no lien on any
particular portion of the goods and is only an ordinary
creditor except that he has the right of distress by reason
of which he may place himself in a better position."
*Sutton* v. *Reese*, 9 Jur. (N. S.) 456. A right fully as great
is created by the Georgia statute here in question. For
while giving the owners of agricultural lands a special
lien on the crops, there was no intention to deprive the
proprietor of urban and other real estate of the lien for
rent which there, as in other States, is treated as an in-
cident growing out of the relation of landlord and tenant.

The Code (§ 2787) expressly "establishes liens in favor
of landlords." It (§ 3124) gives them "power to distrain
for rent as soon as the same is due." It declares (§ 2795)
that landlords "shall have a general lien on the property
of the tenant liable to levy and sale  .  .  .  which dates
from the levy of the distress warrant to enforce the same."
It is true that prior to levy it covers no specific property,
and attaches only to what is seized under the distress
warrant issued to *enforce* the lien given by statute. But
in this respect it is the full equivalent of a common law
distress—the lien of which is held not to be discharged by
§ 67f. *In re West Side Paper Co.*, 162 Fed. Rep. 110;
*Austin* v. *O'Reilly*, 2 Wood, 670.

The fact that the warrant could be levied upon property
which had never been on the rented premises does not
change the nature of the landlord's right, though it may
increase the extent of his security. The statutory re-
strictions as to date, rank and priority may be important
in a controversy with other lienholders, but was wholly

immaterial in this contest between the landlord and trustee, where the latter was only representing general creditors. As against them the landlord had from the beginning of the tenancy the right to a statutory lien, which had completely ripened and attached before the filing of the petition in bankruptcy. The priority arising from the levy of the distress warrant was not secured because Mayer had been first in a race of diligence, but was given by law because of the nature of the claim and the relation between himself as landlord and Burns as tenant. In issuing the distress warrant the justice acted ministerially. *Savage* v. *Oliver*, 110 Georgia, 636. The sheriff was not required to return it to any court, and no judicial hearing or action was necessary to authorize him to sell for the purpose of realizing funds with which to pay the rent. Such a lien was not created by a judgment nor "obtained through legal proceedings."

Decisions to the same effect were made under the Bankruptcy Act of 1867 (14 Stat. 517, 522, § 14), which dissolved attachments or mesne process within four months prior to the filing of the petition. In *Austin* v. *O'Reilly*, 2 Wood, 670, decided in 1875, it appeared that in Mississippi the landlord had no lien, but as in Georgia was authorized to seize (but by attachment) the tenant's goods wherever found. Justice Bradley, presiding at Circuit, said that the landlords' right to a distress at common law was not a strict lien, "but being commonly called a lien, and being a peculiar right in the nature of a lien, . . . the Supreme Court of the United States, and most of the District and Circuit Courts have regarded it as fairly to be classed as a lien, within the true intent and meaning of the Bankrupt Act," and that the statutory attachment being in the nature of a common law distress was not nullified or discharged by the bankruptcy proceedings.

There is nothing in the act of 1898 opposed to this conclusion. On the contrary, its general provisions indicate a

purpose to continue the same policy and an intent, as against general creditors, to preserve rights like those given by the Georgia statute to landlords, even though the lien was enforced and attached by levy of a distress warrant within four months of the filing of the petition in bankruptcy.

*Affirmed.*