### In re CITY DRUG STORE.

(District Court, S. D. Georgia, W. D.   June 11, 1913.)

BANKRUPTCY ⬅191—CLAIMS—PRIORITY—RENT.

Civ. Code Ga. 1910, § 3340, provides that landlords shall have a special
lien for rent on crops made on land rented from them superior to all
other liens, except liens for taxes, and also a general lien on the debtor's
property liable to levy and sale, and that such general lien shall date from
the time of the levy of the distress warrant to enforce it. Bankr. Act
July 1, 1898, c. 541, § 42a(2), 30 Stat. 557, as amended by Act June 25,
1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), provides that the
trustee shall be deemed vested with all the rights, remedies, and powers
of a creditor holding a lien by legal or equitable proceedings. Section
67f invalidates all levies and other liens obtained through legal pro-
ceedings within four months of the filing of the petition. Held, that a
landlord of other than farm lands has a lien entitling his claim for rent
to priority in payment, though there has been no levy of a distress war-
rant, as the provision that the lien dates from the levy of such warrant
would seem merely to provide the time from which the process of the
court can be exercised for its enforcement, while the purpose of the
amendment of 1910 was to protect general creditors from unrecorded

mortgages, unlawful transfers, spurious claims, and to prevent the dissipation of the bankruptcy assets through unworthy and unmeritorious demands.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286, 287, 290, 351; Dec. Dig. ☞191.]

In Bankruptcy. In the matter of City Drug Store, bankrupt. On claim of Mahoney & Co., as landlords, to priority. Claim of priority allowed.

Charles Akerman, of Macon, Ga., for claimant.

Hardeman, Jones Park & Johnston, Orville A. Park, and E. P. Johnston, all of Macon, Ga., for trustee in bankruptcy.

SPEER, District Judge. Here is a controversy between the owner of a business house in Dublin, Ga., and the trustee in bankruptcy of its tenant. That tenant is the City Drug Store. It became bankrupt, owing to the landlord the sum of $236.67 for rent. The landlord insists that his right, as such, under the laws of the state of Georgia, gives him priority, and that his rent should be paid in full out of the assets.

This claim of priority is denied by the trustee. It is insisted for the latter that the levy of a distress warrant was essential to the completion of the landlord's lien. Here, while the contract of tenancy and the actual tenancy antedated the bankruptcy proceeding by two months, there was no levy of such distress warrant.

Now the landlord's lien was conferred by the state statute (Code 1910, § 3340). This provides:

"Landlords shall have a special lien for rent on crops made on land rented from them, superior to all other liens except liens for taxes, to which they shall be inferior, and shall also have a general lien on the property of the debtor, liable to levy and sale, and such general lien shall date from the time of the levy of a distress warrant to enforce the same."

The statute, it is seen, creates a special lien for the landlord of farm lands, and a general lien for the landlord of other realty.

The priority of right in the landlord, asserted under this statute, has been hotly contested. As to the general lien of the landlord, where there had been a levy of a distress warrant, in Henderson, Trustee, v. Mayer, 225 U. S. 631–639, 32 Sup. Ct. 699, 56 L. Ed. 1233, it was upheld. These questions, so vital to those owning land in this state, may therefore be regarded as settled, and since the vast preponderance of values vested in our people is in lands, such investments have been accorded a degree of stability by the highest authority which is now of grave importance and will be increasingly important hereafter.

The Supreme Court in the Mayer Case, supra, indeed, placed the landlord's right upon what seems the broadest and most enduring foundation. It declared that the landlord's lien is not created by the levy of the distress warrant, but arises out of the relation of landlord and tenant. There are, in various forms, in this paramount and unanimous decision, reiterated expressions of this fundamental principle. It is, however, insisted for the trustee here that the state statute above

quoted makes the general lien date. from the time of the levy of the distress warrant to enforce the same. It is further insisted with great plausibility that the Mayer Case was decided before the amendment to the Bankruptcy Act of 1910, by which it was declared that the trustee in bankruptcy "shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings." Section 47a (2). It is further insisted that, since the trustee here was appointed before the landlord levied his distress warrant, the amendment giving him the lien specified antedates and therefore has priority of, the landlord's lien. In support of this contention, the learned counsel who appeared for the trustee, who is also the editor of the Annotated Code of Georgia, cites the statutory catalogue of lien priority in this state, as follows:

"The following liens are established in this state: (1) Liens in favor of the state, counties, and municipal corporations for taxes. (2) Liens in favor of creditors by judgment and decree. (3) Liens in favor of laborers. (4) Liens in favor of landlords. (5) Liens in favor of mortgagees. (6) Liens in favor of landlords furnishing necessaries [and seven other classes]."

He then insists that the trustee's right as a judgment creditor, when it antedates the distraint, has priority, although acquired subsequently to the contract between the landlord and tenant. Unhappily for this inference, the argument of the same learned counselor evoked in this court in the recent case of In re J. H. Virgin, Bankrupt, 224 Fed. 128, the decision that the trustee's lien, provided by the same amendment, was inferior to a mortgage previously executed, which was made in good faith, but which had been recorded only one day before bankruptcy. Such a mortgage lien, in Georgia, is such from the date of its execution. The contract between landlord and tenant also exists from the date of its making. The former, if unrecorded, affords no notice to the business world; the latter does. The title of the landlord is of record. The public is therefore charged with notice that the tenant, the bankrupt in this case, is occupying the land of another. There, too, is the inherent right of the landlord, which has been recognized from the time whereof the memory of man runneth not to the contrary. He is the only *lord* known to our system.

The provision of the statute that his lien dates from the levy of the distress warrant, in view of the Mayer Case, already cited, would seem merely to provide the time from which the process of the court can be exercised for its enforcement. Can it be maintained that a mortgage, which in Georgia does not convey title, but is merely a security for debt, is, in the bankruptcy court, of greater dignity than the right of the landlord who holds title to the soil? The mortgage must be foreclosed; the distress warrant must be levied. The bankruptcy court may permit or direct either; but the lien of both, if honestly created, springs into existence the moment the contracts respectively were made. To hold otherwise in the case would be utterly to deny the landlord's right. The tenancy had existed for only two months. Had the distress warrant been sued out within that time, and anterior to bankruptcy, the proceeding would have been void ab initio, by the express terms of the act. Section 67f provides as follows:

"All levies, judgments, attachments, or other liens, obtained through legal proceedings * * * within four months prior to the filing of a petition in bankruptcy shall be deemed null and void."

And thus the proceeding to enforce the lien of the landlord on whose land the business itself was conducted would have been destroyed.

It seems, moreover, clear to the court that the purpose of Congress in the amendment of 1910, in giving the lien of a judgment creditor to the trustee, was to protect the general creditors from unrecorded mortgages, unlawful transfers, spurious claims, and to prevent the dissipation of the bankruptcy assets through unworthy and unmeritorious demands. This statutory lien, for such purposes, has not altogether the effect of a judgment obtained by due process of law, made anterior to a contract between the landlord and tenant. Such a judgment would take the goods of the tenant liable to levy and sale. But the trustee himself accepts his position and takes his lien charged with the knowledge that the contract between landlord and tenant exists. In many, if not most, cases of bankruptcy, as trustee, he continues the business of the bankrupt on the property of the landlord. Without the use of the land, the whole enterprise would have been thwarted in limine. Moreover, was the contention of the trustee sound, it might be feasible for him to hold the landlord's farm, warehouse, or storehouse, or other realty, and accord him merely the meed of any general creditor without lien or other security.

While this is not the view of other judges, for whom there is here entertained the profoundest deference and respect, and, of course, is not in harmony with the views of the referee, expressed in his report with a clarity which seems to rival some of the precedents cited, it seems in strict consonance with the rights of the landowner as defined by the Supreme Court of the United States in the Mayer Case, and upon which so much of the stability of our system must depend.

For these reasons, the finding of the referee is not approved. The claim of the landlord is held entitled to priority, and direction may be taken that it be paid in full by the trustee.