**In re LEBED.**

No. 21029.

District Court, E. D. Pennsylvania.

June 30, 1941.

Jacques H. Geisenberger, of Lancaster, Pa., for trustee.

William J. Blank, of Columbia, Pa., for claimant.

BARD, District Judge.

This matter arises on a petition to review the order of the Referee denying full priority of payment to the rent claims of the two landlord-petitioners and restricting priority to three months' rent under Section 67, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. c.

The pertinent facts are contained in a stipulation of counsel. On August 14, 1939, the two landlords, acting through a constable with a landlord's warrant, levied upon and seized the stock and fixtures of the debtor for accrued rent of eight and ten months each. Sale was stayed at the request of certain, but not all, of the creditors to permit the filing of an involuntary petition in bankruptcy. It was then agreed that the landlords should have a lien on the funds derived from the sale in the hands of any receiver or trustee to the same extent as if they, the landlords, had exercised their right of sale prior to bankruptcy. On August 26, 1939, the involuntary petition was filed and, on September 14, 1939, the debtor was adjudicated a bankrupt.

As previously noted, under the order of the Referee, petitioners were limited to priority for three months' accrued rent and were accorded the status of general claimants for the stated balances.

Section 67, sub. c of the Bankruptcy Act, 11 U.S.C.A. Sec. 107, sub. c, provides: "Where not enforced by sale before the filing of a petition in bankruptcy or of an original petition under chapter 10, 11, 12, or 13 of this Act [title], though valid under subdivision b of this section, statutory liens, including liens for taxes or debts owing to the United States or to any State or subdivision thereof, on personal property not accompanied by possession of such property, and liens whether statutory or not, of distress for rent shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 [104] of this Act [title], and, except as against other liens, such liens for wages or for rent shall be restricted in the amount of their payment to the same extent as provided for wages and rent respectively in subdivision a of section 64 [104] of this Act [title]."

Section 64, sub. a, clauses (1) and (2), 11 U.S.C.A. § 104, sub. a, cl. (1) and (2), provides, in general, for priority of payment for the actual and necessary costs of preserving the estate subsequent to the petition, filing fees and the expenses of recovery of property, costs of administration, and wages, not exceeding $600 to each claimant, earned by workmen, servants, clerks and salesmen within three months of bankruptcy.

In re Goldstein, D.C.E.D.Pa.1940, 34 F. Supp. 876, the distinction between a priority for rent existing by virtue of a state statute and a landlord's lien of distress for rent, was discussed in full detail. It was there pointed out that, in Pennsylvania, under the Act of July 17, 1919, P.L. 1029, § 1, 39 P.S.Pa. § 96, where goods and chattels are on the demised premises "liable to distress by the landlord for rent" at the time of the filing of a petition in bankruptcy, the proceeds of the sale of such goods are charged with prior payment of the landlord's claim for rent not exceeding one year. Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a, enumerates those debts which are to have priority in the distribution of the assets of the bankrupt estate after nonvoidable and unrestricted lien claims have been satisfied but before dividends are paid to other creditors. `Fifth

in the order of such priority, Section 64, sub. a(5), is " * * * rent owing to a landlord who is entitled to priority by applicable State law: Provided, however, That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy."

Thus, while both a *lien* of distress for rent unenforced by sale and a *priority* or *charge* for rent existing under state law are restricted as to the amount of preference in distribution to rent accrued within three months of bankruptcy, a landlord's *lien* is postponed in payment only to the claims provided for in Section 64, sub. a, clauses (1) and (2), supra, while a mere *priority* or *charge* is subordinated to the debts given priority by Section 64, sub. a, clauses (1), (2), (3) and (4). It is evident, therefore, that the practical significance of the distinction may often become very important.

Setting aside, for the moment, the problem raised by the pre-bankruptcy agreement between certain of the creditors and the petitioners, the instant case would appear to be governed by In re Jay & Dee Store Co., 1941, 37 F.Supp. 989, decided by all of the Judges of the Eastern District of Pennsylvania sitting en banc. Under the dictum of the Goldstein case supra, and the holding of the Jay & Dee case, supra, a landlord's lien of distress which is perfected within four months of bankruptcy, while valid, will be postponed in payment to the claims enumerated in Section 64, sub. a(1) and (2) and will be restricted in amount to three months' accrued rent as are rent priorities under Section 64, sub. a(5). In this respect, the order of the Referee was entirely correct.

Petitioners, however, have challenged the correctness of the foregoing construction of Section 67, sub. c of the Bankruptcy Act. They contend that, by virtue of the constable's levy under the landlords' warrant, they were in possession of the goods prior to the filing of the bankruptcy petition and that, therefore, the restrictions of Section 67, sub. c have no application. In this connection, emphasis is placed on the language in Section 67, sub. c referring to statutory liens *"on personal property not accompanied by possession of such property"* and it is urged that this clause also governs the enforceability of landlords' liens. In my opinion, the proffered construction is entirely untenable. First of all, Section 67, sub. c clearly distinguishes between statutory liens and "liens whether statutory or not, of distress for rent." The limitation italicized above appears only in that portion of the section dealing with statutory liens while no such restriction appears in the provisions regarding landlords' liens of distress. Secondly, a lien of distress is not secured until levy by the landlord or someone acting for him under his warrant. See Trickett, Law of Liens in Pennsylvania, § 330. Until then, the landlord's priority is limited to that accorded by Section 64, sub. a(5). To hold that the "constructive possession" secured by the levy, which itself creates the lien of distress, defeats the application of Section 67, sub. c would be to render nugatory the express provisions of that section. It must be reiterated that the governing statutory provisions expressly deal with *"liens * * * of distress for* rent". Such liens, whether or not they are accompanied by "constructive possession", are bound by the limitations of Section 67, sub. c of the Bankruptcy Act. A contrary construction not only would ignore the plain provisions of the Act but would defeat the obvious purpose of the amendment of 1938 which was to prevent the repetition of prior bankruptcy experiences whereby rent claims in small estates used up all of the funds and left nothing for the payment of administration costs. See H.R.Rep.No. 1409, 75th Cong., 1st Sess., 1937, pp. 15, 16; see also Moore's Bankruptcy Manual, 1939, p. 189.

It is recognized that the case of In re Kocialek, D.C.M.D.Pa.1940, 32 F.Supp. 228, 229, is contrary to the present holding and our decisions in Re Jay & Dee Store Co., supra, and In re Goldstein, supra. The Kocialek decision appears to have been predicated upon the theory that the mere existence of the landlord-tenant relationship gives rise to a "pledge" of chattels on the demised premises, in the nature of a lien, but not a lien of distress for rent, and, as such, does not come within the restrictive provisions of Section 67, sub. c. The distress warrant, accordingly, was viewed merely as a method of enforcing "a valid landlord's lien". If it were true that the mere relationship gives rise to a lien in the landlord's favor superior to the rights of other creditors, it is evident that there would have been no necessity for the enactment of the numerous Pennsylvania stat-

utes, noted in the Goldstein case, supra, 34 F.Supp. at page 878, which provide priority for the landlord's rent claim out of the proceeds of the sale of goods and chattels "liable to distress", 39 P.S.Pa. § 96, on the demised premises at the time of a levy under execution, an assignment for the benefit of creditors, the appointment of a receiver, or the intervention of bankruptcy proceedings. Moreover, the landlord's lien which is effective as against creditors actually does not ripen until levy under the landlord's warrant. I do not find myself in accord with the holding in the Kocialek case of the effect of the landlord-tenant relationship and with the construction in that opinion of Section 67, sub. c with regard to the liens affected thereby.

Finally, the effect of the pre-bankruptcy agreement between the petitioners and certain of the creditors must be considered. The fact that the constable's sale was postponed upon the request of these creditors so that an involuntary petition might be filed, under an agreement that the landlord's position should be the same as though sale actually had been made, was not considered by the Referee in reaching his decision. In the trustee's brief, it is admitted that "had the landlord proceeded under his levy, there would not have been sufficient time within which to secure the necessary signers to an involuntary petition in bankruptcy before the sale could have been held by the landlord. Had he actually enforced his lien by sale, he would have had his money, and the controversy would not have arisen. The fact is that the request for the extension has been greatly to benefit the bankrupt estate. The receiver sold the stock which had been levied upon, for $1,800.00, but had the constable sold the same goods, it is extremely doubtful if a fund more than required to pay the landlord's claim of $540.00 would have been raised, so that from a strictly practical viewpoint, the bankrupt estate could pay the landlord's claim and still be more than $1,000.00 ahead. The landlord is being penalized for the courtesy which was extended to present counsel for the trustee. The trustee, however, has a duty to perform to all of the creditors, and * * * to submit the matter to the Court with the fairest statement of facts possible. That has been done by Stipulation heretofore filed." Paragraph 6 of the stipulation provides: "The sale date was extended with the understanding and agreement between counsel for the several parties as aforesaid (i.e., petitioners and certain, but not all, of the creditors), that the rights of the landlords should be preserved; that the landlords should have a lien on the funds derived from the sale in the hands of any receiver or trustee to be subsequently appointed by the bankruptcy court, to which they are entitled under the law, if any, to all intents and purposes as if the sale had been held by the constable".

█ In my opinion, claimants are entitled to full priority of payment as against those creditors who induced them to forego their right of sale under the agreement that their rights should be the same as if sale had been made. Of course, the rights of the other non-consenting creditors could not be affected by this agreement and, as to them, the trustee's distribution of the assets should conform strictly with the provisions of the Bankruptcy Act. But, as to those creditors who were parties to the aforementioned agreement, the situation obviously is different. In effect, the agreement insured the landlords against any loss they might otherwise have incurred by foregoing their recognized right of sale, and to the extent necessary to fulfill this guarantee, it might be said that these consenting creditors have waived their rights to participate in the distribution of the estate. It is admitted by the trustee that, had the sale been held, the landlords would have been paid in full and little would have been left for the other creditors; and it is agreed that the estate has been benefited substantially by the postponement effected. Under these circumstances, to hold that the agreement was of no legal effect would be to countenance palpable injustice. This Court having jurisdiction over the assets and being endowed with the powers of a court of equity, complete relief should be given in the present proceedings. It would appear, therefore, that the dividends of creditors who were parties to the agreement should provide the full priority of payment for the accrued rent exceeding the three months' allowance. The following procedure is recommended to the trustee: If all of the creditors affected are merely general creditors, payment to the landlords should be made out of their shares, pro rata, in proportion to the respective amounts they otherwise would have received. Should any of the creditors affected be entitled to a priority under Section 64, the amount of such priority should be segregated and held by the trustee until it is determined wheth-

462

er the balance of the landlords' claims can be satisfied out of the general dividends owing to these creditors. If not, payment should then be made from the fund set aside as a priority under Section 64. Of course, should any of these creditors hold a secured obligation, his rights thereunder are not affected by the agreement in question.

Accordingly, the order of the Referee is affirmed in part and reversed in part; and the case is remanded with directions to allow full priority to petitioners' claims, in accordance with this opinion, as against those creditors who were parties to the agreement referred to in paragraph 6 of the stipulation.