**In the Matter of GEORGE TOWNSEND COMPANY, Inc., Bankrupt.**

No. 24446.

United States District Court
E. D. Pennsylvania.

April 23, 1957.

M. E. Maurer, Philadelphia, Pa., for the trustee.

John A. Erickson, Asst. U. S. Atty., Philadelphia, Pa., for the Government.

Herman N. Silver, Philadelphia, Pa., for the conditional sales vendor.

W. Horace Hepburn, Jr., Philadelphia, Pa., for the landlord.

VAN DUSEN, District Judge.

This matter comes before the court on petitions of Francis L. Plumly, trustee of the Estate of George Lasher, deceased landlord, and Hamilton R. Marsh Co., secured creditor, to review the Order of Distribution of the referee in bankruptcy dated November 26, 1956, of certain funds in the hands of the trustee in bankruptcy for George Townsend Company, Inc., of Philadelphia, Pa., which was adjudged a bankrupt on August 15, 1955.

On July 22, 1955, a federal tax lien for $1809.38 was filed. The landlord did not distrain for rent prior to the filing of the bankruptcy petition.

The funds realized from the sale of the bankrupt's personal property on the demised premises at the time of the bankruptcy were $5714.92 and such funds were insufficient to meet the allowed claims.

Two secured claims, consisting of a conditional sales agreement dated August 20, 1954, and a chattel mortgage agreement dated August 6, 1954, were allowed in the respective sums of $902.50 and $828.40 without determining the order of priority of payment.[1]  Also al-

---

1. By a written stipulation of September 14, 1955, the conditional sales vendor, through its counsel, agreed with the coun- sel for the receiver that the press and the attached equipment would be sold along with the other assets of the bank-

lowed were: tax claims totaling $3388.66 (the above $1809.38 federal tax lien is included in this figure); a landlord's rent claim for $653.50; and administrative expenses of $2832.55, which sum includes $735 to the landlord for use and occupation of the demised premises by the receiver.

On these facts, the referee determined that the order of distribution should be: (1) administration expenses; (2) the federal tax lien; (3) other taxes; (4) the landlord's priority for rent; and (5) the security interests.

Generally, it is only after valid liens are satisfied that § 64 of the Bankruptcy Act (11 U.S.C.A. § 104) [2] becomes op-

erative. The Supreme Court has consistently recognized that valid liens under state law are a prior charge against the bankrupt's assets unless the liens fall under the terms of § 67, sub. c.[3] Section 67, sub. c of the Bankruptcy Act [11 U.S.C.A. § 107, sub. c] postpones in payment "statutory liens, including liens for taxes or debts owing to the United States or to any State or any subdivision thereof, on personal property not accompanied by possession of such property, and liens, whether statutory or not, of distress for rent" to debts specified in § 64, sub. a(1) and (2), namely, expenses of administration and wage claims. Thus, expenses of administration have priority under § 64, sub. a(1)

rupt and the security interest of the conditional sales vendor would be relegated to the fund realized. The conditional sales vendor then confirmed the sale and presented a secured proof of debt at the hearing for the audit of the account.

2. Section 64 of the Bankruptcy Act (11 U.S.C.A. § 104) states:

"104. Debts which have priority

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) * * * (expenses of administration); (2) wages * * * not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; * * * (3) where the confirmation of an arrangement or wage-earner plan or the bankrupt's discharge has been refused, revoked, or set aside upon the objection and through the efforts and at the cost and expense of one or more creditors, or, where through the efforts and at the cost and expense of one or more creditors, evidence shall have been adduced resulting in the conviction of any person of an offense under chapter 9 of Title 18, the reasonable costs and expenses of such creditors in obtaining such refusal, revocation, or setting aside, or in adducing such evidence; (4) taxes legally due and owing by the bankrupt to the United States or any State or

any subdivision thereof: * * * and (5) debts owing to any person, including the United States, who by the laws of the United States is entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law: *Provided, however,* That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy."

3. See City of Richmond v. Bird, 1919, 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543; Goggin v. Division of Labor Law Enforcement, 1949, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543. See also, 4 Collier § 70.70, at p. 1344, where it states that:

" * * * If the lien under consideration is valid under applicable lien law (normally state) and is not invalidated by virtue of some express provision of the Act, it is a valid lien in bankruptcy and will be a prior charge against the estate ahead of administrative expenses and dividends to unsecured creditors, except where it falls within one of the classes of valid liens that are subordinated and restricted in payment under § 67c. * * *."

Neither counsel nor the hearing judge has been able to find a Pennsylvania appellate court decision holding where a landlord has not distrained that he has a lien or that his right under the state statutes (see 68 P.S. § 321; 39 P.S. §§ 96 and 216, cited in footnote 4 below) is superior to the lien of a chattel mortgagee or a conditional sales vendor. See 12A P.S. § 9–303 and 302; 21 P.S. § 941.1ff. .

over the lien of a landlord, a tax lien, and statutory liens.

The holding of In re Quaker City Uniform Co., 3 Cir., 1956, 238 F.2d 155, that the lien of a chattel mortgagee, inferior under state law to the landlord's lien, should by necessary implication be postponed by § 67, sub. c to a position behind the subordinated lien of a landlord who has distrained, is not applicable here, because there is no "lien * * * of distress for rent."

Since the landlord has not distrained, his claim is an unsecured claim, entitled to priority under § 64, sub. a(5),[4] and his claim does not achieve the status of a lien subordinated by § 67, sub. c. His claim is, also, subordinated to the federal

---

4. The filing of a bankruptcy petition is equivalent to the issuance of an execution against the tenant, and once such an execution has been made, the Pennsylvania law (68 P.S. § 321)* then substitutes for the landlord's right to distrain a preference out of the fund derived by the sale of those goods on which he might have distrained. See In re Mount Holly Paper Co., 3 Cir., 1940, 110 F.2d 220, 225; Rosenblum v. Uber, 3 Cir., 1919, 256 F. 584; Bennett's Estate v. Sproul, 3 Cir., 1930, 42 F.2d 33. In Moss's Appeal, 1860, 35 Pa. 162, 165, the court said: "The legislature meant to substitute the landlord's claim on the proceeds of the execution sale for his right of distress. Where one existed the other was intended to be conferred * * *." See, also, Lewis's Appeal, 1870, 66 Pa. 312, and Zug v. Watson, C. P. Franklin Co., 1933, 19 Pa.Dist. & Co.R. 571, 573. But, though under Pennsylvania law a landlord's distress has priority over the claim of a conditional sales vendor and a chattel mortgagee [see Reinhart v. Gerhardt, 1943, 152 Pa.Super. 229, 31 A.2d 737; National Cash Register Co. v. Ansell, 1937, 125 Pa.Super. 309, 317–318, 189 A. 738; Ferbro Trading Corp. v. Jo-Mar Dress Corp., 1951, 78 Pa.Dist. & Co.R. 337, 341; Myers v. Esery, 1890, 134 Pa. 177, 19 A. 488; Holman v. Bonesteel, 1950, 33 Erie 286, 289], where there is no distraint, the landlord has an unsecured claim entitled to priority under Section 64, sub. a (5). In re Lebed, D.C.E.D.Pa.1941, 39 F.Supp. 457, 460–461; In re Goldstein, D.C.E.D.Pa.1940, 34 F.Supp. 876; In re West Side Paper Co., 3 Cir., 1908, 162 F. 110. See In re Mount Holly Paper Co., supra; In re Jay & Dee Store Co., D.C.E.D.Pa.1941, 37 F.Supp. 989; Hay v. Patrick, 3 Cir., 1935, 79 F.2d 407; In re Empire Granite Co., D.C.M.D.Ga. 1942, 42 F.Supp. 450, 453; In re Pittsburg Drug Co., D.C.W.D.Pa.1908, 164 F. 482; In re Kocialek, D.C.M.D.Pa.1940, 32 F.Supp. 228. See, also, 4 Collier on Bankruptcy (14th Ed.), § 67.23 at pp. 230–4, which indicates that Longstreth v. Pennock, 1874, 20 Wall. 575, 87 U.S. 575, 22 L.Ed. 451, relied on by the landlord, merely preserves his priority where no liens are involved. See Henderson v. Mayer, 1912, 225 U.S. 631, 32 S.Ct. 699, 56 L.Ed. 1233. In In re Lebed, supra, the court said, 39 F.Supp. at pages 460–461:

> "Thus, while both a *lien* of distress for rent unenforced by sale and a *priority* or *charge* for rent existing under state law are restricted as to the amount of preference in distribution to rent accrued within three months of bankruptcy, a landlord's *lien* is postponed in payment only to the claims provided for in Section 64, sub. a, clauses (1) and (2), supra, while a mere *priority* or *charge* is subordinated to the debts given priority by Section 64, sub. a, clauses (1), (2), (3) and (4). It is evident, therefore, that the practical significance of the distinction may often become very important.

> &ast;  &ast;  &ast;  &ast;  &ast;

> " * * * a lien of distress is not secured until levy by the landlord or someone acting for him under his warrant. See Trickett, Law of Liens in Pennsylvania, § 330. Until then, the landlord's priority is limited to that accorded by Section 64, sub. a (5). * * *

> "If it were true that the mere relationship gives rise to a lien in the landlord's favor superior to the rights of other creditors, it is evident that there would have been no necessity for the enactment of the numerous Pennsylvania statutes, noted in the Goldstein case, supra, 34 F.Supp. at page 878, which provide priority for the landlord's rent claim out of the proceeds of the sale of goods and chattels 'liable to distress', 39 P.S.Pa. § 96, on the demised premises at the time of a levy under execution, an assignment for the benefit of creditors, the appointment of a receiver, or the intervention of bankruptcy proceedings. Moreover, the landlord's lien which is effective as against creditors actually does not ripen until levy under the landlord's warrant."

---

* See, also, 39 P.S. § 96 and 39 P.S. § 216, which also do not create a lien but merely a priority or a preference.

tax lien, Miners Sav. Bank of Pittston, Pa. v. Joyce, 3 Cir., 1938, 97 F.2d 973, 978, and to debts given priority by the first four clauses of § 64. In re Lebed, D.C.E.D.Pa.1941, 39 F.Supp. 457.

Since Congress has not postponed to administrative expenses all of the liens that are valid under state law, and since the security liens of the chattel mortgagee and the conditional sales vendor are not postponed by § 67, sub. c,[5] there is here no problem of upsetting state lien priority such as that present in the Quaker City case, supra, as there is no subordinated superior state lien.[6]

Thus, the Congressional intent in § 67, sub. c, to favor administrative expenses and wage claims does not contemplate the postponement of the secured interests [7] present in this case, and the order of payment will be: (1) the chattel mortgagee and the conditional sales vendor; [8] (2) administration expenses; (3) the federal tax lien; (4) other unsecured tax claims (which receive priority under § 64, sub. a(4)); and (5) the landlord's priority under § 64, sub. a(5).

The referee's order of distribution is modified to accord with the above opinion and order of payment.

5. Since the funds are sufficient to pay all administrative expenses and liens (other than the tax lien which is subordinate in time to the other liens), it is not necessary to decide whether the liens of the chattel mortgagee and the conditional vendor are "statutory liens" as these words are used in § 67, sub. c of the Bankruptcy Act (11 U.S.C.A. § 107, sub. c). Cf. In re Quaker City Uniform Co., supra, 238 F.2d at pages 158–159. In this proceeding there are no valid liens that are superior to those of the secured interests (the chattel mortgagee and the conditional sales vendor) and, therefore, the problem of circuity of liens is not present and there is no reason to postpone the latter interests to administrative expenses. See City of New Orleans v. Harrell, 5 Cir., 1943, 134 F.2d 399, 400.

6. The federal tax lien was filed in 1955, subsequent to the two security liens of August 6, 1954, and August 20, 1954. Thus, though the tax lien is postponed by § 67, sub. c, it cannot subordinate the prior security liens. See § 6323(c) (1) of the Internal Revenue Code of 1954, 26 U.S. C.A. § 6323(c) (1), subordinating federal tax liens to prior security interests.

7. See legislative history of § 67, sub. c summarized in footnote 8 in Goggin v. Division of Labor Law Enforcement, supra, 336 U.S. at pages 127–129, 69 S.Ct. at pages 474–475, (footnote 3, supra).

8. Since the chattel mortgagee and the conditional sales vendor will both receive payment for their lien claims under this order of distribution, it is not necessary to determine whether the conditional sales vendor's claim, that he retains title to the press, gives him priority over the prior-in-date lien of the chattel mortgagee.