**In the Matter of CONSOLIDATED CONTAINER CARRIERS, INC.**

No. 28992.

United States District Court
E. D. Pennsylvania.

May 27, 1966.

Meyer E. Maurer, Wexler, Mulder & Weisman, Philadelphia, Pa., for trustee.

George J. O'Neill, Dechert, Price & Rhoads, Philadelphia, Pa., for respondent.

## OPINION

JOHN MORGAN DAVIS, District Judge.

An involuntary petition in bankruptcy was filed on August 10, 1965, praying that Consolidated Container Carriers, Inc. be adjudged bankrupt. On March 12, 1965, over four months prior to the filing of the bankruptcy petition, Acme Fast Freight, Inc. had commenced an assumpsit action against Consolidated Carriers, Inc. by means of a writ of foreign attachment in the Court of Common Pleas of Philadelphia County. By this procedure the $6375.15 bank account in the debtor's name in the Continental Bank and Trust Company was attached. As of August 10, 1965, when the bankruptcy proceedings were instituted, Acme had not obtained a judgment in its suit in the Pennsylvania courts. The Referee held that the bankruptcy court had summary jurisdiction of the bank account but allowed Acme to seek review here.

The question now presented is whether the bankruptcy court has summary jurisdiction over the bank account of a debtor where a creditor, more than four months prior to the filing of the bankruptcy petition has commenced an action against the debtor in a state court by means of a writ of foreign attachment against that asset but where no judgment had yet been obtained as of the time of the filing of the petition.

Section 67(a) (1) of the Bankruptcy Act, 11 U.S.C. § 107 provides in part:

"Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four

months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this title * * *."

Since the writ of foreign attachment was executed more than four months prior to the commencement of the bankruptcy proceedings, the time element is not a contested matter here. Rather, the issue narrows itself to whether Acme had a lien within the meaning of the statute when it filed the writ of foreign attachment. It is argued that if Acme's interest in the bank account does not have the status of a lien, the $6375.15 will come within the summary jurisdiction of the bankruptcy court.

To answer this issue, the court must first determine the legal incidents of a writ of foreign attachment under the law of Pennsylvania. We then must decide whether these attributes come within the definition of a lien as a matter of federal bankruptcy law. 4 Collier, Bankruptcy § 67.07; Mussman & Riesenfeld, "Garnishment and Bankruptcy" 27 Minn.L.Rev. 1 (1942).

■ The purpose of the writ of foreign attachment in this Commonwealth is to attach the property of an out-of-state defendant in order to satisfy a possible judgment against him and also to compel his appearance. See Alpers v. New Jersey Bell Telephone Co., 403 Pa. 626, 170 A.2d 360 (1961); Pennsylvania R. Co. v. Pennock, 51 Pa. 244 (1866); Marano v. Granata, 151 Pa.Super. 454, 30 A.2d 243 (1943); 10 Standard Pa.Practice (Rev) Ch. 42 §§ 1-2; Pa.Rules Civil Proc. rules 1251-1279, 1285-1292, 12 P.S.Appendix. "It is tantamount to an involuntary dispossession of the defendant prior to any adjudication of the rights of the plaintiff —an execution, so to speak, in advance of trial and judgment." 10 Standard Pa. Practice, supra § 2.

■ There is no question that the law of Pennsylvania deems attached property outside the possession or control of the defendant and in *custodia legis*. This status exists from the moment that the writ is served on the garnishee or the assets are seized by the Sheriff. See Clement v. Courtright, 9 Pa.Super. 45 (1898); 10 Standard Pa.Practice §§ 127, 301-03.

■ We are satisfied that a Pennsylvania writ of foreign attachment is a lien within the meaning of the Bankruptcy Act. While our research has uncovered no other case that has construed this particular Pennsylvania writ for bankruptcy purposes, the cases are legion which hold that attachment liens of a similar nature remain immune to the jurisdiction of the bankruptcy court if they existed more than four months prior to the institution of the bankruptcy. Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060 (1931); Henderson v. Mayer, 225 U.S. 631, 32 S.Ct. 699, 56 L.Ed. 1233 (1912); Metcalf v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902); Irby v. Corey, 95 F.2d 963 (5th Cir. 1938); Piedmont Coal Co. v. Hustead et al., 294 F. 247, 32 A.L.R. 556 (3d Cir. 1923); Tennessee Producer Marble Co. v. Grant, 135 F. 322 (3d Cir. 1905); 4 Collier, Bankruptcy §§ 67.04, 67.07 (see cases cited therein).

■ This immunity remains even though the attachment lien has not been reduced to final judgment prior to the crucial four month period. 4 Collier, Bankruptcy, §§ 67.07; 5 Remington Bankruptcy § 2070. In Henderson v. Mayer, supra, the Supreme Court was faced with the question whether the bankruptcy court had jurisdiction over property on which the debtor's landlord had a general statutory lien for the payment of rent, a lien which covered no specific property and attached "only to what is seized under the distress warrant issued to *enforce* the lien given by statute." Henderson v. Mayer, supra, 225 U.S. at 638, 32 S.Ct. at 701. The court stated that the landlord's lien was preserved from the hands of the trustee in bankruptcy "even where the registration, foreclosure, or levy necessary to their completion or enforcement was within four

months of the filing of the petition in bankruptcy." Henderson v. Mayer, supra, 225 U.S. at 637, 32 S.Ct. at 701.

In Metcalf v. Barker, supra, the Supreme Court dealt with the effect of a "lien created by a judgment creditor's bill" in New York where the final decree in favor of the plaintiff was not handed down until after bankruptcy proceedings had commenced. This lien, very similar to a writ of foreign attachment, was "contingent in the sense that it might possibly be defeated by the event of the suit, but in itself, and so long as it exists, it is a charge, a specific lien, on the assets, not subject to being divested save by payment of the judgment sought to be collected." The Court asserted at p. 174 of 187 U.S., at p. 71 of 23 S.Ct.:

> " * * * where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized. When it is obtained within four months the property is discharged therefrom, but not otherwise. A judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens."

Likewise in Straton v. New, supra, the Supreme Court, following Metcalf v. Barker, supra, stated at p. 326, n. 6 of 283 U.S., at p. 468 of 51 S.Ct.:

> "It is also well settled that where an attachment is levied more than four months prior to bankruptcy, the prosecution of the claim to judgment and sale within the four months will not be enjoined or the sale set aside."

The receiver, however, relies on In re Boylan, 65 F.Supp. 105 (E.D.Pa.1946) for the proposition that the bankruptcy court has summary jurisdiction over the bank account involved here. In that case, the creditor of the bankrupt obtained two judgments against her in 1926 in the Common Pleas Court of Philadelphia County. In 1930, the creditor filed writs of attachment execution against one Herman Watkins who was adjudged to owe the bankrupt over $7000. The creditor took no further steps in this garnishment proceeding until 1945 after the debtor filed a voluntary petition in bankruptcy. The question was whether the bankruptcy court had jurisdiction over the property subject to the lien, and the court held that it did. Without passing upon those portions of the opinion which appear to be in conflict with the above mentioned Supreme Court decisions, the case is readily distinguishable from the instant action. First of all, the creditor voluntarily submitted himself to the jurisdiction of the bankruptcy court by filing his proof of claim. Secondly, the validity of the creditor's lien was in issue. Neither of these factors is present in the instant action.

■ The receiver also argues that the bank account was in the constructive possession of the bankrupt and thus within the jurisdiction of the bankruptcy court because the asset remained in the name of the Consolidated Carrier, Inc. Even conceding that the account was still technically under the debtor's name, we have found no cases where a lien was invalidated solely because the property attached or levied against remained in the debtor's name. We will not permit criteria of form to overcome those of substance.

In addition, the receiver has disregarded the nature of demand deposits in Pennsylvania where the relationship of a bank to its depositors is that of debtor and creditor. Once the money is placed in the bank, it belongs to the institution and the latter then simply owes the depositor a debt. Coffin v. Fidelity-Philadelphia Trust Co., 374 Pa. 378, 391, 97 A.2d 857, 39 A.L.R.2d 625 (1953); Smith's Estate, 141 Pa.Super. 571, 576–577, 15 A.2d 523 (1940).

■ Since the bank is in the position of a debtor to the bankrupt, the money it is obligated to pay to the bankrupt is not subject to the summary jurisdiction of the bankruptcy court unless the bank consents to such jurisdiction. Here, Continental Bank and Trust Co. has contested

jurisdiction. Under the circumstances, the trustee must bring a plenary suit in a court of competent jurisdiction to recover any such property to which he believes the bankrupt is entitled. See in re Roman, 23 F.2d 556, 558 (2d Cir. 1928) (Opinion by Judge Learned Hand); 5 Remington, Bankruptcy, § 2174; 5A Remington, Bankruptcy § 2400; Cf. In re Standard Gas & Electric Co., 119 F.2d 658 (3d Cir. 1941); In re Italian Cook Oil Corp., 91 F.Supp. 72 (D.N.J.1950).

■ Finally, the receiver contends that if the bankruptcy court does not have summary jurisdiction, a multiplicity of suits will result here because of the government's tax lien against Consolidated which is admittedly superior to Acme's lien. The trustee in bankruptcy may in turn subordinate a federal tax lien to administration and wage claims. Nevertheless, the priority given to the United States in this situation in no way places the trustee in a favored position so as to vitiate an attachment lien held by a creditor more than four months before the bankruptcy proceedings and certainly does not give the bankruptcy court summary jurisdiction. The trustee must recover any property if at all by instituting a plenary action against the United States. 4 Collier, Bankruptcy §§ 67.04 [1] n. 5, 67.24. See United States v. Speers, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965); United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924).

### ORDER

And now, this 27th day of May 1966, the Order of the Referee dated January 3, 1966 is hereby Reversed and the petition of the Receiver for a restraining Order against Acme Fast Freight, Inc. is dismissed for lack of summary jurisdiction over the bank account in the name of the bankrupt in the Continental Bank and Trust Company. The case is remanded to the Referee in Bankruptcy for further action not inconsistent with this Opinion.